(No. 4344. Decided December 29, 1904.)

WESTLAND PUBLISHING COMPANY, *Appellant*, v. M. G. ROYAL *et al., as Directors of School District No. 1, of Thurston County, Respondents and Appellants, and* DAVID LINCOLN, *Intervenor and Appellant.*[1]

APPEAL—DISMISSAL—BOND—FORM AND SUFFICIENCY. Where the bond on appeal runs to the State of Washington, instead of to the adverse party, as required by Bal. Code, § 6505, but obligates the appellant to pay all costs etc. awarded against it, and the intent is manifest to execute it for the benefit of the respondents, the appeal will not be dismissed, especially in view of Laws, 1899, p. 79, providing that appeals shall not be dismissed for defects in the bond, if upon order the party perfect the appeal.

SCHOOLS—STATE BOARD OF EDUCATION—UNIFORM SYSTEM OF TEXT BOOKS. Under Laws, 1897, p. 356, the state board of education has the exclusive power to adopt a uniform series of text books and prepare a general course of study for the public schools.

SAME—COURSE OF STUDY INCONSISTENT WITH STATE COURSE. Where the course of study prescribed by the state board of

[1] Reported in 78 Pac. 1096.

education for public schools under § 27 of the school code, requires the use of certain text books and writing tablets in certain specified grades, a course of study prescribed by the directors of a school district, requiring such text books to be supplemented by the use of others on the same subject, is inconsistent with the law of the state, and is not authorized by § 73 of the school code giving such directors the power to grade the schools, nor by the fact that §§ 73 and 27 are apparently repugnant.

SAME—REMEDY FOR FAILURE OF DISTRICT TO FOLLOW STATE COURSE OF STUDY—INJUNCTION—MATERIAL DAMAGES. Where a school district refuses to follow the course of study adopted by the state board of education, the publisher of the books (under contract with the state board) is not entitled to relief by injunction unless materially damaged, and an injunction will not be issued because one teacher testified that more of plaintiff's writing tablets would have been used if they had not been supplemented by other copy books, when it does not appear how many more would have been used, and when the tablets were used in all the grades prescribed, and one more.

SAME—FOLLOWING STATE COURSE OF STUDY—GRADING SCHOOLS —DIFFERENT CLASSES IN SAME YEAR. Where the directors of a school district divided the sixth year into two classes, A and B, the latter being promoted into the former after the first half of the year, the requirement by the school district that the text book prescribed by the state board of education for the sixth grade be used in class A only, is not a violation of the rights of the publisher, since the state course does not contemplate the use of the publication at all times during the year, especially where it appears that it is used until the pupils become proficient therein, and since no damage is shown where it does not appear that there were any pupils in the sixth grade who did not purchase and use the book during the year.

SCHOOL DISTRICTS—CLASS OF—NUMBER OF TEACHERS EMPLOYED —PLEADING AND PROOF—AMENDMENT. A finding that a school district is of the class employing more than one teacher is supported by the evidence where three teachers of the district testify, and the pleadings may be considered amended to bring the same within the issue determined.

INTERVENTION—PARTIES INTERESTED IN LITIGATION—PATRON OF SCHOOL INTERVENING IN SUIT AGAINST DISTRICT BROUGHT BY PUBLISHER OF TEXT BOOKS. A taxpayer in a school district whose

children attend the school has no such interest in the matter in litigation as entitles him to intervene in an action brought against the district by the publisher of text books under a contract with the state board, which action is based on the publisher's contract to supply the books needed and seeks to enjoin the school district from deviating from the course of study prescribed by the state board of education.

Cross-appeals from a judgment of the superior court for Thurston county, Linn, J., entered June 5, 1902, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action for an injunction. Affirmed. Also, an appeal from an order denying a petition for leave to intervene, entered February 17, 1902. Affirmed.

*Vance & Mitchell* and *Ballinger, Ronald & Battle,* for appellant.

*J. B. Allen, C. D. King, M. G. Royal,* and *Troy & Falknor,* for respondents.

*J. B. Allen* and *Troy & Falknor,* for appellant intervenor.

PER CURIAM.—This action was instituted by the plaintiff to enjoin the defendants, as the board of directors of school district No. 1, of Thurston county, from using certain books and publications, during specified times, in the common schools of the city of Olympia, and to compel them to use exclusively, during the time mentioned, a text book "Why We Vote," and "St. John's Analytic Writing Tablets," published by plaintiff, and furnished for use in the schools throughout the state under an alleged contract with the state board of education. The complaint alleges, that the plaintiff is a corporation, duly organized and existing under the laws of the state of Washington, and duly empowered to do

business therein, and, as such corporation, is engaged in the publication of school and text books, and is the publisher of "St. John's Writing Tablets," and "Why We Vote," a text book on civics; that each of the defendants is a duly elected and qualfied member of the board of directors of school district No. 1, of Thurston county, a municipal corporation existing under the laws of this state, and together constitute the board of directors of said district; that said school district does not embrace within its limits a city containing ten thousand or more inhabitants; that on the — day of ——, 1900, in accordance with the laws of the state of Washington, the state board of education, being duly authorized thereto, did adopt a list and series of text books for use in the public schools of the state of Washington, and prescribed a course of study in said schools, and subsequently did enter into certain contracts, at the times and dates, and upon the terms, thereinafter mentioned, for the furnishing of said text books in said schools, such action and such contracts being for the use and benefit of the state of Washington according to the laws and constitution thereof, the list and series so adopted being thereto attached, marked "Exhibit A," and made a part of this complaint; that upon the 14th day of May, 1900, the state of Washington, through its duly authorized agents, the state board of education, did enter into the contracts above alluded to with the plaintiff, adopting for use, in the schools of the state of Washington, certain text books and publications published by the plaintiff, and for the furnishing of the same by plaintiff for the term of five years, beginning September 1, 1900, and ending on September 1, 1905, the terms and conditions of said contracts (omitting prices of publications stated) being as follows:

"This contract, made and entered into this fourteenth day of May, 1900, between the state board of education of the state of Washington, party of the first part, and Westland Publishing Company of Olympia, a corporation organized and operating under the laws of the state of Washington, party of the second part, witnesseth: That the aforesaid party of the second part has made a proposition to supply to the people of the state of Washington certain text books, a copy of which proposition is hereto attached and made a part of this contract; and in consideration of the terms set forth in said proposition, and of the terms of this contract, the state board of education of the state of Washington, party of the first part, hereby adopts the following named books to be used in the public schools of the state of Washington, for a period of five years from and after September 1st, 1900: Elementary Civics, 'Why We Vote,' St. John's Writing Tablets, for the grammar grades. That for and in consideration of the adoption of the books hereinbefore mentioned, the said party of the second part hereby agrees to furnish said books in sufficient quantities for the use of the common schools of Washington for the full term of five years, as aforesaid, at the following exchange, wholesale and retail prices, in accordance with the law governing the same [stating them]. And the said party of the second part agrees to maintain the present or superior style and quality of scholarship, material, illustrations and general mechanical excellencies of the aforesaid book as shown by sample submitted to said board of education, party of the first part. And the party of the second part hereby promises and agrees that the books above named shall be of the kind and quality set forth in their proposal and this contract, and the prices of said books shall be as hereinbefore specified, and that this contract shall be null and void at the option of the party of the first part if the party of the second part fail to comply with all the terms hereof; Provided, a reasonable notice shall be given to the party of the second part by the party of the first part, together with a reasonable opportunity wherein to fulfill the terms of this agreement." (Signed, etc.)

It is also alleged, that said contract was duly approved by the proper officers of the state, and that a bond, as required by law, was executed, approved, and filed with the proper custodian; that the said course of study prescribed by the state board of education directed and required the said books to be used in schools such as are embraced in and a part of school district No. 1, of Thurston county, in the following grades: St. John's Writing Tablets, in classes A and B throughout the fifth, sixth, seventh, and eighth years of the course of study as prescribed; and "Why We Vote," in classes A and B and throughout the entire sixth year of the prescribed course; that the said adoption, contract, and prescribed course of study required the use of said books during the entire life of said contract, in the manner prescribed by the proper authorities, and that said contract is in good standing, and has been complied with in all respects by the plaintiff; that under the laws of the state, it is made the duty of the directors of said school district No. 1 to enforce the requirements of the law, and to compel the use of the books above mentioned, as well as all books adopted, contracted for, and prescribed in the schools of said district; that said defendants, acting in their official capacity, have directed the teachers and employees in the school of said district to refuse to use said books in the course of study prescribed by the state board of education, and threaten to continue such unlawful direction and refusal, and will, unless enjoined by the court, fail and refuse in the future to use said books, prescribed in said course of study, and will cause the teachers and subordinate employees of said school to continue said refusal to use said books; that, in accordance with said direction, given by the defendants in their official capacity, the teachers and subordinate employees of the

schools of said district are refusing, and will continue to refuse, said books in the course of study prescribed unless said defendants are enjoined and restrained by the court from persisting in their unlawful course and directions, and are required to use the books aforesaid, as prescribed by the proper authority; that said defendants, directors of said district, have been repeatedly requested by the plaintiff to require and enforce, in the schools of said district, the use of the said books, in the course and in the manner and at the time prescribed by the adoption, contract, and course of study; that the said defendants have been requested and instructed by the proper superior school officers of said county to use and enforce the use of said books, according to said prescribed course of study, but the defendants, in their official capacity as board of directors, have refused, and still declare that they will not use said books in the manner, at the time, and in the course prescribed.

It is further alleged, that, acting under the direction and instruction of the defendants herein, the teachers of said school district have adopted and prescribed a pretended course of study, and are attempting to enforce the pursuit of the same in the schools of said district, by which said books of plaintiff will not be used but will be supplanted; that the said board of directors threaten and intend to use other books in the future, during the lifetime of this contract, and in place and stead of the said books of plaintiff, and will discard the use of the said books altogether, unless restrained by the court, and that the employees of the said school district, acting under the illegal direction of these defendants, will discard altogether, and not use, the contract books of the plaintiff, unless the defendants are restrained as prayed and required by plaintiff; that the rights of the plaintiff under

its contract, adoption, and course of study are valuable pecuniary and contract rights; that the said contract and the law excludes the state, and all school districts such as said district No. 1, from using any book or books in place or stead of the books described in plaintiff's contract, whether the book or books attempted to be substituted for the same are used as substitutes directly or are called and denominated additional or supplementary text books.

It is next alleged, that the damage that would accrue to the plaintiff by reason of said illegal action of defendants would continue during the life of the plaintiff's contract, and may not be calculated in money, and that the injury which would result to the plaintiff is irreparable, and that the plaintiff has no remedy at law; that the said illegal action of the defendants prevents and interferes with the sale, by the plaintiff, of the books in said contract, assured to the plaintiff by the laws of the state of Washington; that the work on civics, entitled "Why We Vote," has not been used in the public schools of the state, and in the schools of said district No 1. of Thurston county, as required by law, during the entire sixth year, but only during one-half of said year, and in one class in said year; that St. John's Writing Tablets should have been used during the fifth, sixth, seventh, and eighth years, and in all the classes prescribed, but it has been used and prescribed to be used only in the fifth, sixth, and seventh years, and one-half of the eighth year; that, in addition to St. John's Writing Tablets, the defendants have used, during said years, certain other text books and tablets covering the same subject matter covered by the St. John's Writing Tablets, to the great detriment and damage of plaintiff, and that the officers of said school district have no right,

either at law or in equity, to add to or supplement the books of plaintiff, or to use other books together with the books of plaintiff, covering the same subject matter.

The defendants interposed a motion to make this complaint more definite and certain in certain particulars, which motion was by the court denied. They then demurred to the complaint on practically all the statutory grounds. The demurrer was overruled, and the defendants thereupon answered, denying each and every averment of the complaint, except that they were the qualified and acting directors of school district No. 1, of Thurston county, Washington, and setting up certain matters as affirmative defenses, the principal purpose of which seems to have been to show why plaintiff's contract and bond, mentioned and described in the complaint, were invalid, and wherein there was a defect of parties to the action. The plaintiff interposed a demurrer to the affirmative defenses, which demurrer was sustained. The defendants declined to amend further, and the cause went to trial upon the complaint and the amended answer of the defendants theretofore filed. Having duly considered the evidence adduced upon the trial, and made and filed its findings of fact and conclusions of law, the court dismissed the action, and gave judgment against the plaintiff and in favor of the defendants for their costs and disbursements. From this judgment both parties appealed.

The defendants move the court to dismiss plaintiff's appeal for the reason that no appeal bond has been given by said appellant to respondents, "the adverse party," as required by law. The appeal bond in question runs to the state of Washington, instead of to the adverse party (respondents), as prescribed by § 6505, Bal. Code, but in all other respects it strictly conforms, both in form

and substance, to § 6505 of said code. It obligates the appellant to "pay all costs and damages that may be awarded against it on said appeal or the dismissal thereof, so taken to the supreme court, not exceeding the sum of two hundred dollars." The intent and meaning of the bond is manifest; and, while the bond was not executed *to* the respondents, as adverse parties, it was evidently executed and filed for their benefit and protection, and, in case of an action upon it, neither the principal nor the sureties therein named would be permitted to challenge its validity. It is not the policy of our law to deprive a litigant, upon merely technical grounds, of the right to have his cause tried and determined upon its merits. The legislature has declared that, on the hearing of motions to dismiss appeals, . . . "The court shall upon like terms allow all amendments in matters of form, curative of defects in proceedings, to the end that substantial justice be secured to the parties, and no appeal shall be dismissed for any informality or defect in the notice of appeal, the appeal bond, or the service of either thereof, or for any defect of parties to the appeal, if the appellant shall forthwith, upon order of the supreme court, perfect the appeal." Laws 1899, p. 79. See, *Bloomingdale v. Weil,* 29 Wash. 611, 70 Pac. 94. In view of the above quoted provision, as construed in the case above cited, we would not be justified in dismissing the appeal without first granting the appellant the privilege of executing and filing a more formal and perfect undertaking, even if we considered the bond already filed in the case imperfect and insufficient in substance. Believing that this bond was intended by appellant to protect the respondents from the payment of the costs of an unsuccessful appeal, and that it is sufficient for that purpose, the motion to dismiss the appeal is denied.

Before entering upon a discussion of any of the questions raised by the appellant plaintiff, we deem it advisable to refer to the provisions of the code of public instruction (Laws 1897, p. 356), defining the powers and duties of the state board of education, the boards of directors of school districts, and the county superintendents of common schools. Section 27 of that code declares that the state board of education shall have power to adopt or readopt, according to law, at a special meeting, to be called by the superintendent of public instruction, a uniform system of text books for the use of the common schools throughout the state, and to prepare a course or courses of study for the primary, grammar, and high school departments of the common schools. Section 105 prescribes the manner in which such uniform system of text books for the use of the common schools, including graded schools, shall be adopted or readopted by the state board of education. It provides, in substance, among other things, that no books shall be adopted without a majority vote of the whole board: *Provided,* they can secure an exchange of books at any time in use for those of the same or next higher grade, without a greater average cost to the people than that specified therein; that said board shall have power to enter into contract with the publishers of the books adopted for the supply of the same, to take effect on the first day of September following; that the books so adopted shall not be changed within five years thereafter, unless the publishers of such adopted books shall fail to comply with the terms of the contracts, and that the adoption provided for shall occur every five years, at the time of the year and in the manner therein provided, unless otherwise ordered by the legislature. Section 33 of the code of public instruction declares that it shall be the duty of the county superin-

tendent of schools to enforce the course of study adopted by the state board of education. And it is provided in § 40 that it shall be the duty of boards of directors, unless otherwise specially provided by law, to enforce the course of study prescribed by the state board of education, and to require all pupils to be furnished with such books as may have been adopted by the state board of education, as a condition to membership in the schools; and § 174 provides that any district failing to comply with the course of study prescribed by the board of education shall forfeit twenty-five per cent of their school fund for that or the subsequent year, which sum the county superintendent is required to deduct from the apportionment to be made to such district. Section 73 provides that, in all such city and town districts where the number of children of school age is sufficient to require more than one teacher, the school or schools in such city or town districts shall be graded in such manner as the directors thereof shall deem best suited to the wants and conditions of such districts; provided the course of study established for such districts shall not be inconsistent with the laws of this state.

In view of the provisions of our school law above referred to, it was certainly the intention of the legislature to confer upon the state board of education the exclusive power to adopt a uniform series of text books, and to prepare a general course of study for the public schools of the state. And they also evidently intended that the books adopted by the board should be used, and the prescribed course of study pursued, in the various departments of the public schools. But it must be borne in mind that, although the state board of education is empowered to adopt text books, and to prepare a course of study for the schools, it is neither expressly nor by

necessary implication authorized by law to grade all or
any of the numerous common schools in this state. Nor
has it undertaken to do so. It has simply "prescribed"
a course of study to be followed in the schools during
designated years, and especially in graded schools. Many
of the schools are not, strictly speaking, graded at all.
Indeed, the legislature seems to have assumed that only
the schools in incorporated cities and towns would be
graded. See ch. 2, §§ 72 and 73, of the code of public
instruction. And, as we have seen, the directors in such
districts where the employment of more than one teacher
is required are empowered to grade the schools in such
a manner as they shall deem best suited to the wants and
conditions of such districts; subject, however, to the limi-
tation that the course of studies established for such dis-
tricts shall not be inconsistent with the laws of the state.

The trial court found, and the evidence shows, that the
state board of education entered into the contract above
set out with the appellant, at the time therein mentioned;
that, at or about the same time, said board adopted a
series of text books for the use of the common schools for
the period of five years from and after September 1,
1900, and prepared and published a course of study for
the schools of the state. The series of books adopted by
the board included St. John's Writing Tablets and the
text book on civics entitled "Why We Vote" (both pub-
lished by appellant), and the state course of study re-
quired the use of the former for the fifth, sixth, seventh,
and eighth school years, and the latter for the sixth year.
The respondents, as directors of school district No. 1,
graded the schools and established a course of study
therein, prescribing the use of St. John's Writing Tab-
lets, in conjunction with Heath's Copybook, during the
fourth as well as the fifth, sixth, seventh, and eighth

years or grades, and · "Why We Vote" in class A, or during the latter half of the sixth year of the schools. , The state course of study prescribed Heath's Copybook or Vertical System of Writing, for the first four or primary grades, and St. John's Writing Tablets for the second four or grammar grades. The course of study established by the respondents for the schools under their charge provides for two classes, B and A, the former embracing the first, and the latter the last, half of each school year. Under this arrangement, the pupils, on completion of their studies in class B, are regularly passed into class A. It appears from the complaint herein that the deviations, above mentioned, of the course of study established by the respondents, and followed in the schools of Olympia (which is included in said district No. 1), from the course of study adopted by the state board of education, constitute the basis of appellant's cause of action. And, in order to obtain the relief demanded, it is incumbent upon the appellant to prove, not only that the acts on the part of the respondents, of which it complains, are inconsistent with the laws of the state, but that it was, or will be, as alleged, irreparably injured or at least materially damaged thereby; and the learned judge of the court below concluded that the appellant failed to establish, at the trial, either of those propositions. It was admitted by the respondents at the beginning of the trial, as alleged in the complaint, that the school district involved in this proceeding does not embrace within its limits a city containing ten thousand or more inhabitants; and it is not pretended that certain provisions of the statute relating to the adoption of text books by the directors of such districts are applicable to the case at bar.

The first and principal contention of appellant is that, by virtue of its contract, it is entitled to the exclusive right to have the text books mentioned therein used in the schools during the entire years for which they were adopted and prescribed by the state board of education, and that the action of the respondents, in prescribing and permitting the use of other books, covering the same subject matter, either parallel with, or to the exclusion of, the books so adopted, affords a just and legal ground for the issuance of the writ of injunction, as prayed. And it must be conceded that appellant's contract is an exclusive one to the extent, at least, that the books published by it, and adopted by the proper state officials, may not be supplanted, during the life of the contract, by other text books on the same subject. But we find no evidence in the record showing that either St. John's Writing Tablets, or the book on civics "Why We Vote," has not been used at all in the schools of this district in the years designated in the state course of study. If the respondents were warranted by law in causing Heath's Copy Book to be used in the grammar grades in connection with St. John's Writing Tablets, it follows that the appellant has no cause of complaint upon that ground; and whether they were so warranted depends upon the intention of the legislature in enacting the section of the statute granting and defining their powers as to grading the schools and establishing a course of study.

The power to grade the schools of districts, where grading is necessary, is plainly and explicitly conferred upon the board of directors by § 73 of the school law; and the power to establish a course of study not inconsistent with law is impliedly conferred by the proviso contained in that section. It being the province of the directors of the school district embracing the city of Olympia to

grade the schools therein, and to establish in accordance
with law a course of study for such district, the ques-
tion arises whether they transcended their authority
in grading the schools and establishing the course of
study above mentioned. The appellant contends that
they did; and, if § 27 of this code of public instruction
and the other sections thereof, hereinbefore designated,
which require the directors and other school officers to
enforce the course of study prepared by the state board,
were the only sections in the act relating to the subject
of courses of study, we would find no difficulty whatever
in sustaining appellant's contention. But, in order to
determine the real meaning of the legislature as to the
power of school directors, it is necessary to read and con-
sider § 73, as well as all other provisions of the statute
pertaining to the same subject. And it will be perceived
that the proviso in that section, which seems clearly to
imply that the directors in districts such as the one in
question may establish, for such districts, a course of
study not inconsistent with the law of the state, is appar-
ently repugnant to the provision in § 27 which plainly au-
thorizes the state board of education to prepare a course of
study for the various departments of the common schools.
Construing these two sections so as to give force and
effect to each of them. the lower court arrived at the
conclusion,

"That the legislature intended that the state board of
education should adopt a course of study that could be
adjusted to the several school districts according to their
conditions and requirements; and that the board of di-
rectors, in grading their district, . . . should estab-
lish a course of study for their district by fitting the
state course to the grades established for their district,"
and, therefore, held that the course of study adopted by

the respondents for the schools of this district is not in-
consistent with the laws of the state, or the rights of the
appellant.

But we do not think that the construction placed by
the court upon the proviso in § 73, as we understand it,
is entirely correct, for it appears to us, from a consider-
ation of that provision, together with all other cognate
provisions of the statute, that it was the intention of the
legislature to authorize or permit the directors of desig-
nated school districts to establish only such courses of
study as are consistent with the course adopted by the
state board of education.   To hold otherwise, would be
to hold that the legislature intended to confer upon cer-
tain boards of school directors practically the same power
as to the adoption of courses of study that it had already
conferred, by § 27, upon the state board of education;
and there is no provision in § 73, or elsewhere in the
statute, which would justify such a conclusion.   We there-
fore think it was the purpose of the legislature to pro-
vide for one, and only one, course of study for the graded
schools in cities such as Olympia, and that the course of
study established by respondents was, and is, inconsistent
with the law of the state, in so far as it departs from the
state course of study.   But it does not necessarily follow,
from this conclusion, that the appellant is entitled to the
relief sought in this action.   In *Rand, McNally & Co.
v. Hartranft*, 29 Wash. 591, 70 Pac. 77, which was an
action for an injunction based on a contract similar to
the one here in question, this court, after having care-
fully considered the authorities bearing on the question
in hand, said:

"We are constrained to the conclusion, therefore, that
the weight of authority is in support of the principle
that equity will not interfere by injunction in behalf of

one who is merely nominally damaged as to profits arising from a contract such as the one at bar. The wrong asserted must be more than a mere technical or inconsequential one to warrant equitable interference."

That case is decisive of this, so far as the merits of the case are concerned. There is no evidence in the record showing that appellant has been, or will be, more than nominally damaged, if damaged at all, by the alleged wrongful action on the part of the respondents. It is true, one of the teachers in the seventh grade, who testified as a witness for appellant, said he thought more of St. John's Tablets would be used in that grade if Heath's Copy Books were not also used. But how many more of such tablets would be used if the copy book were discarded is not shown by the evidence. Moreover, the testimony in the case shows that these writing tablets have been regularly used in the schools of the district from the fourth to the eighth years, inclusive, which is one year more than the state course of study requires. How, then, can it be successfully maintained that the appellant has not furnished as many of these tablets as it was entitled, under the contract, to furnish for the use of the schools in question?

The contention that the appellant has been damaged by the failure of the respondents to cause the text book "Why We Vote" to be used in class B as well as in class A of the sixth year is not tenable. In the first place, the state course of study does not contemplate or require the use of that publication at all times during that year, for it is suggested therein that such book may be used alternately with some reader. And, in the second place, it does not appear that there were any pupils in the sixth grade who did not purchase and study that book. The proof shows, and the court found, that the

respondents have required each pupil in class A of the
sixth year to study said text book "Why We Vote" in
such manner as to acquire "a proficient knowledge
thereof;" that they have, in good faith, and in such man-
ner as they believed the grading of the schools permitted,
required said text book "to be taught in said sixth year,
or grade," and that "the pupils in class B are, during
the sixth year, promoted to class A." The school direct-
ors and teachers must be permitted to exercise some dis-
cretion in determining the length of time, in each year,
which should be devoted to the study of a particular
book or subject, for otherwise it would be difficult, if
not impracticable, properly to grade the schools, or to
classify the pupils; and it would seem unreasonable to
require a pupil to continue to study any of the branches
taught in the school after he has become proficient therein.
The appellant was, by the terms of its contract, only
entitled to furnish this text book "in sufficient quanti-
ties for the use of the common schools of Washington
for the full term of five years;" and it does not satis-
factorily appear that it has, at any time, been deprived
by the respondents of the right to so furnish it for the
use of the schools of Olympia.

In regard to the objection of appellant that the find-
ing of the trial court that the school district in question
is one requiring the employment of more than one
teacher, is not within the issues formed by the pleadings,
and is unsupported by the evidence, it is perhaps suffi-
cient to observe that, although the question of the char-
acter of the district was virtually eliminated from the
issues to be tried, by the ruling of the court upon the
plaintiff's demurrer to the affirmative defenses set up in
the answer, still the record discloses that as many as
three teachers employed in the schools were called as

witnesses at the instance of the appellant, and that they testified on the trial without objection by either party. This is, we think, persuasive evidence in favor of the finding of the court in question, and the court was justified in considering the pleadings amended in conformity . with the evidence. Indeed, it might easily be inferred from the complaint herein that this district No. 1 is one of that class of districts which necessarily requires the employment of more than one teacher.

Our conclusion is that the judgment is right, and it is therefore affirmed with costs.

We shall not extend this opinion by discussing the numerous questions raised by the defendants on their cross-appeal, for the reason that the affirmance of the judgment renders them immaterial.

Before the trial of this cause between the original parties, one David Lincoln applied to the court, by petition, for leave to intervene in the action, by joining the defendants in resisting the claims of the plaintiff. The petition, after reciting that the petitioner is a resident of, and a taxpayer in, school district No. 1 of Thurston county, and the father of children attending school in said district, alleges substantially the same facts which were stated in the amended answer of the defendants. This petition was denied and the petitioner appealed.

Our statute, Bal. Code, § 4846, provides that "Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation in the success of either party, or an interest against both." The sole question for determination on this appeal is, has the petitioner such an interest in the *matter in litigation* between the original parties as entitles him to intervene? And we are of the opinion that he has no such interest. The matter in litigation here—in

other words, the subject matter of the action—as contradistinguished from the *cause of action*, which is an entirely different thing—is the plaintiff's contract and its claims thereunder, and these are certainly matters in which this appellant has no legal interest whatever. In deilvering the opinion of the court in *Horn v. Volcano Water Co.*, 13 Cal. 69, Field, J., said:

"The interest mentioned in the statute, which entitles a person to intervene in a suit between other parties, must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. . . . To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in suit, or a claim to, or lien upon, the property, or some part thereof, which is the subject of litigation."

The doctrine thus stated by Judge Field is approved by Mr. Pomeroy in his treatise on Code Remedies (3d ed.), § 430. And this California case was cited and followed by the supreme court of Nevada in *Harlan v. Eureka Mining Co.*, 10 Nev. 92, in interpreting a statute identical with that of this state. Tested by the above authorities—and many more to the same effect might be cited—the order denying appellant's petition was right, and it is therefore affirmed. No costs will be recovered by either party on this appeal.