[S. F. No. 3820. In Bank.—January 13, 1905.]

R. H. ELDER, Respondent, v. JOHN E. McDOUGALD, Treasurer of the City and County of San Francisco, Appellant.

PRELIMINARY EXAMINATION BY POLICE JUDGE—SOURCE OF POWER—SAN FRANCISCO CHARTER—PENAL CODE.—The charter of the city and county of San Francisco only confers upon the police court, as such, the power to conduct preliminary examinations in cases of felony, and no such power could be conferred upon the police judge by the charter, under the grant of power by the constitution to create police courts. Nevertheless, the police court having been established, a judge thereof has power to hold a preliminary examination as a committing magistrate under the general provisions of section 808 of the Penal Code.

ID.—POWER TO APPOINT STENOGRAPHIC REPORTER—CONSTITUTIONAL LAW —PROVISIONS OF CHARTER—CODE PROVISIONS SUPERSEDED.—Under section 8½ of article XI of the constitution, placing police courts under charter control, and authorizing the charter to fix the compensation of attachés, the power given by the charter of the city

and county of San Francisco to the police judges to appoint not more than two stenographic reporters, and fixing their compensation and duties, including the taking of notes of all preliminary examinations, is exclusive, and supersedes the provisions of section 869 of the Penal Code, so that a police judge acting as a committing magistrate has no power under that section to appoint another stenographic reporter, and to fix his compensation as a charge upon the municipal treasury.

ID.—"ATTACHÉS" OF POLICE COURT—STENOGRAPHERS.—The stenographers appointed by the police judges under the charter are "attachés" of the police court within the meaning of section 8½ of article XI of the constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, and John P. Coghlan, Assistant City Attorney, for Appellant.

George D. Collins, for Respondent.

LORIGAN, J.—A *mandamus* proceeding was brought to compel defendant, as treasurer of the city and county of San Francisco, to pay a claim of plaintiff for services rendered as stenographic reporter in reporting the testimony and proceedings before a judge of the police court of the city and county of San Francisco, at the preliminary examination held therein, of one R. A. Fitzgerald, charged with murder. The superior court sustained the demurrer to the answer of defendant, and ordered a peremptory writ to issue, requiring payment as prayed for by plaintiff, and defendant appeals.

There is no dispute as to the fact of the appointment of plaintiff and the rendition of the services; it relates to the validity of the appointment itself.

The plaintiff was appointed by a judge of the police court, created under the charter of the city and county of San Francisco, before whom the preliminary examination was being held, and the appointment was made under section 869 of the Penal Code, which it is claimed conferred power upon him to do so. It is insisted by the appellant, however, that the judge had no authority to make the appointment under this section, but that the charter of the city and county of San Francisco,

which provides for the appointment of two stenographers by
the judges of the police court to take notes at all preliminary
examinations and fixes their compensation (of which plaintiff
was not one), furnishes the only authority in the matter of
employment of stenographers in taking preliminary examina-
tions in that court, and that his appointment under the sec-
tion of the Penal Code was void. Hence, the question is
narrowed down to an inquiry as to whether the provision of
the Penal Code, or that of the charter, controls the judges of
the police court of the city and county of San Francisco, in
appointing stenographers to report preliminary examinations
in felony cases held before them.

The constitution (section $8\frac{1}{2}$ of article XI) authorizes and
empowers the creation of police courts, and places such courts
under charter control by providing that "it shall be compe-
tent, in all charters framed under the authority given by
section 8 of article XI of this constitution, to provide, in
addition to those provisions allowable by this constitution and
by the laws of the state, as follows:—

"1. For the constitution, regulation, government, and
jurisdiction of police courts, and for the manner in which,
the times at which, and the terms for which the judges of such
courts shall be elected or appointed, and for the compensation
of said judges and of their clerks and attachés."

Under this constitutional provision a charter for said city
and county was regularly adopted, wherein a police court to
be known as the police court for the city and county of San
Francisco was created and established, consisting of four
judges, one each for the several departments into which the
court was divided.

As to jurisdiction, it was provided that "the police court of
the city and county of San Francisco shall have:—

"First—Exclusive jurisdiction of all prosecutions for the
violation of ordinances of the board of supervisors.

"Second—Concurrent jurisdiction with the superior court
of all misdemeanors and of the examination of all felonies
committed in the city and county.

"Third—Said court, or any judge thereof, shall have the
same powers in all criminal actions, cases, examinations and
proceedings as are now or may hereafter be conferred by
law upon justices of the peace."

This is followed by provisions for the appointment of officers of the court, and then we reach the section particularly under consideration here, relative to the appointment of stenographers, which is as follows: "The police judges may appoint not more than two competent stenographers, who shall attend the sessions of the court, and take notes of all preliminary examinations made at the sessions, and transcribe into typewritten longhand all evidence taken by either of them where the parties charged have been held for trial, and deliver one copy of the same to the clerk and one copy to the district attorney. Each of such stenographers shall be paid for all his services, including transcription and all stationery used by him, an annual salary of twenty-four hundred dollars."

This is a sufficient statement of the charter provisions under which to examine the points involved.

It is quite clear that the adopted charter, in as far as it undertakes to confer jurisdiction to hold preliminary examinations for felonies, confers it solely upon the police court of such city and county, to be exercised as a court. No jurisdiction is conferred under that instrument upon the *judges* of such court to hold them, nor could such jurisdiction be conferred upon them under the constitutional provision which authorizes only the creation of police *courts*. Nor was it necessary to confer any such jurisdiction by the charter. The charter having created the police court, by that very creation any *judge* thereof, *ipso facto*, became vested with jurisdiction to conduct such examinations under the general law of the state as a magistrate. (*People* v. *Crespi*, 115 Cal. 54; *People* v. *Cohen*, 118 Cal. 78.)

That law (Pen. Code, sec. 808) provides that among others invested with such jurisdiction shall be included "police magistrates in towns or cities," and, as incident to their jurisdiction as such magistrates, further provides that they shall have the power to appoint a reporter to take notes of the preliminary examination and to fix his compensation, which shall be paid out of the treasury of the city, or city and county, in which such examination is conducted. (Pen. Code, sec. 869.)

The record in this case shows that the preliminary examination at which the respondent assisted was not conducted by

the police court of said city and county, acting as a *court,* but
by one of the *judges* thereof acting as a committing magis--
trate under the provision of the general law above cited, and
it is insisted that the constitutional provision above quoted
did not authorize the framers of the adopted charter to con-
trol his power to appoint or fix the compensation of a stenog-
rapher, when acting as such magistrate.

It must, of course, be conceded that this contention of
respondent is correct, unless the constitutional provision did
confer such power, even when the *judge* of the police court,
by virtue of his office as such, was acting as a magistrate, and
whether it did or not is the only point in the case.

. It is to be borne in mind that the power conferred upon the
framers of municipal charters to legislate concerning police
courts, as to the "constitution, regulation, government, and
jurisdiction" of such courts, and with reference to the clerks
and attachés thereof, proceeds directly from the people, ex-
pressed under a constitutional provision. Prior to this it
was not competent to make any provision by framers of mu-
nicipal charters for such courts. That power could only be
exercised by the legislature. (*People* v. *Toal,* 85 Cal. 335.)

It was expressly to confer this authority to so legislate that
the amendment to the constitution (section 8½ of article XI)
was adopted by the people: to authorize their creation not
only for municipal purposes—the prosecution for violation
of municipal ordinances—but as agencies of the state to assist,
to a certain extent at least, in the enforcement of its general
criminal laws. As these courts were to be supported and
sustained by the municipalities creating them as part of the
municipal government, and from the municipal funds, it was
intended under the broad provision of the constitution con-
ferring power to "constitute, organize, and govern" them,
that the charter might provide for the appointment and com-
pensation of all persons who might, in a general sense, and
in view of the jurisdiction with which such courts might be
clothed, be deemed necessary to a full and efficient exercise
of such jurisdiction.

And while it is contended on this appeal that it was not
competent under this constitutional grant of power for the
charter framers to invest such police courts with jurisdiction
to enforce the general laws of the state to the extent of hold-

ing preliminary examinations, we do not feel called on to
determine that question. It is not at all involved in the
present inquiry.

If the court could not be invested with such jurisdiction,.
it could certainly be invested with jurisdiction for other pur-
poses, and there is no doubt that it was competent to provide
in the charter for such stenographic reporters as might be
deemed necessary for the general purposes of such courts.
These reporters are recognized by our laws as proper, and
sometimes indispensable, adjuncts to a court, to enable it to
properly and efficiently discharge its duties.

But whatever the power conferred under the constitutional
provision may be relative to the right of the charter framers.
to provide for reporters as necessary to the full and efficient
equipment of the police court, as a court, it is contended that
there is no authority conferred by the constitution upon the
charter framers to provide for such reporters to the *judge* of
said court acting as a committing magistrate in conducting
such examination under jurisdiction conferred by the general
law and not under the charter. We are, however, of an oppo-
site opinion, and think that a fair construction of the consti-
tutional provision not only authorized the framers of the
adopted charter to legislate as to the necessary attachés of
the police court itself, but also as to those whose attendance
upon the judge of the court might be necessary to the exer-
cise of any jurisdiction with which he was invested—whether
that jurisdiction was derived from the charter itself, or was
conferred upon him under the general laws, by virtue of his
existence as a police judge under the charter. The constitu-
tional amendment was framed and adopted with a knowledge
of the then existing legislation relative to police courts and
their duties, and of the jurisdiction conferred upon the latter
under the general law, from their existence as such police
judges. And while authorizing the chartered municipalities.
to provide for the compensation of the attachés of the court
itself, it had in view also the fact that (specially in a merged
and consolidated municipal government, like that of the city
and county of San Francisco) a large jurisdiction might be
exercised by the judges of such courts under the general law,.
in conducting preliminary examinations, and that in exercis-
ing that jurisdiction there would necessarily be incurred ex-

penses to be borne by the municipal treasury, and it was intended that as to any attaché of the judge—as well as of the court—the municipal government should have the right to provide not only for the compensation of the judges, but for "their clerks and attachés." It is insisted, however, that no such authority is given in the constitutional provision for the appointment of attachés to the judge of the police court; that it only provides for fixing their compensation; and that in any event a reporter appointed by a police judge to take notes of the preliminary examination held by him as a magistrate cannot be considered an attaché of such judge under the charter.

As to the power of appointment, we think that from the context of the provision of the constitution it is apparent that such power was conferred. The right to "constitute, regulate, and govern police courts" would be sufficient warrant for the appointment of all persons necessary to its complete and efficient organization, and that the relation of the term "their clerks and attachés" to the general context of the provision authorized not only the fixing of the compensation of such attachés, but of their appointment to the judges of the court when necessary and proper.

It is to be borne in mind, however, in passing, that as far as stenographers are concerned there is no attempt made by the charter provision to appoint any particular person as stenographer, or to appoint at all in the sense of the term as generally understood. It is left to the police judges to make the individual appointments—the charter provisions simply requiring that these appointments must be limited to two stenographers, and it is prescribed that these two shall attend on the court and take notes of all preliminary examinations held therein, and that their compensation shall be an annual sum for all services rendered. This provision of the charter can only be said to be an appointment of stenographers to the extent that, as the judges of the police court have power, under the general law, to appoint stenographers at will for each preliminary examination for a felony held by them and fix their compensation for such examination, it is an attempt to place a limitation upon such power to that extent.

As to whether a stenographer can be included in the cate-

gory of attachés who may be provided to the judge of the
court, we do not think any general discussion of the meaning
of the word "attaché" need be indulged in, because we are
satisfied that, as employed in the constitutional provision, it
is to be taken in the general and enlarged sense, as applying
to any one recognized as a necessary adjunct to a court, tri-
bunal, or office, and that by virtue of the necessity existing at
practically all preliminary examinations, for the appointment
of a stenographer, he should be treated as coming within that
definition. Aside from this, however, the constitutional pro-
vision must be construed in the light of existing legislation,
as to the relation of reporters to judges of police courts, when
the amendment was adopted. Police courts of the city and
county of San Francisco had been established by the legis-
lature, and existed long prior to the adoption of this consti-
tutional provision. These courts were given the same juris-
diction under the acts, and the judges thereof possessed the
same power under the provisions of the Penal Code relative
thereto, as to the examination of felonies committed in the
city and county of San Francisco, as they are given under the
charter provision now, or which they possess under the gen-
eral law. Yet under these acts each judge of a department
of the court was required to appoint a stenographer (Stats.
1889, p. 62, sec. 8; Stats. 1893, p. 9, sec. 8.) It is true that it
was further provided that such reporter should receive for
his services the pay now allowed by law, but whatever his
compensation was, his appointment by the judge of the police
court was provided for by law, and it is only the fact that his
appointment was so provided with which we are concerned.
The only possible occasion when the judges of such courts,
created under these acts, would be authorized to require his
services, would be in taking testimony at preliminary exam-
inations in felony cases, and yet it was deemed then proper
that a regular stenographer should be appointed by the judge
of each department, for attendance thereon, as essential to a
proper exercise of the jurisdiction of the court and of his
own. That these stenographers so appointed were at least
attachés to the judge, we think cannot be successfully ques-
tioned. And for the purpose of taking the testimony in
preliminary examinations, they were a necessary adjunct to
the discharge by the judge of that duty.

And if anything were necessary to be considered aside from the particular provision of section 8½ of article XI, which we have been discussing, to strengthen the conclusion which we have reached, it is found in the closing portion of the general constitutional provision of which section 8½ is a part, and which provides that when a city and county government has been merged and consolidated into one municipal government. it shall be competent, in the charter thereof, to provide for the election or appointment and the compensation of its county officers and of their deputies. This closing provision of the constitutional section indicates the general policy of the state relative to the control which such a municipality shall have over its officers, and reflects light upon the particular provision relative to police courts, their judges, and the clerks and attachés thereof. That policy is, that it shall be exclusively within the power of such chartered municipality to determine the compensation of all its officers, whether the duties to be discharged by them are imposed on such officers by the provisions of the charter, or are required to be performed by them as such municipal officers by virtue of the provisions of the general law of the state. (*Matter of Dodge,* 135 Cal. 513.)

We are of opinion, therefore, that, under section 8½ of article XI of the constitution, it was competent for the framers of the charter of the city and county of San Francisco to provide for the appointment and compensation of the attachés of the *judges* of the police court authorized to be created thereunder, and that stenographic reporters come within the category of attachés; and that it is of no moment that in conducting preliminary examinations the judge of said court acquires jurisdiction to do so as a magistrate under the general law. The purpose of the grant of power by the constitutional provision to the charter framers was to authorize them to provide for the appointment and compensation of all attachés to the *judges* of such court, no matter whether such attachés were necessary to a proper discharge of the duties of said judges under the provisions of the charter or under the requirements of the general law; the charter provision *operated* upon them as to their attachés by virtue of their existence as judges of the police court, created under the charter.

Express power being given to the framers of the charter to provide therein for the appointment and compensation of stenographic reporters as attachés to the judge of said court in whatever capacity as such judge he might be called on to act, and this having been done by the framers thereof, the provisions of the charter in that respect superseded section 869 of the Penal Code as far as it empowered a police magistrate of a city to appoint a reporter for a preliminary examination being held by him and to fix his compensation, because under section 8 of the constitution it is declared that the provisions of a charter authorized by that constitution shall supersede all laws inconsistent with it. It follows that the demurrer to the answer of defendant was improperly sustained and the judgment is reversed.

Angellotti, J., McFarland, J., Shaw, J., Van Dyke, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur. A shorthand reporter is not essential to the examination of a felony charge. The magistrate may, and often does, take down the depositions in longhand and have them subscribed by the witnesses at the time of the examination. The statute merely gives him the privilege, in his discretion, to appoint a reporter to take down the testimony in shorthand, and when that course is followed gives to the longhand transcript the same legal efficacy that it gives to a deposition regularly subscribed by the witness. (Pen. Code, sec. 869.) Conceding, then,—as I think must be conceded,—that the duty and the jurisdiction of the police judges of San Francisco to examine felony charges is solely dependent upon the provisions of the Penal Code, it does not by any means follow that the mere discretion of municipal officers to appoint assistants in the performance of a duty devolved upon them by the laws of the state may not be subjected to reasonable limitations by the municipal charter.

San Francisco being a consolidated city and county, the whole compensation of her police magistrates and their assistants is payable out of the municipal funds. The framers of her freeholders' charter have decided that two salaried shorthand reporters will suffice for the duty of taking down the evidence at preliminary examinations and have said, in effect,

to the police judges, You must get along with that number. It results, of course, that if more than two examinations were going on at the same time one or more of the judges would be deprived of the assistance of a stenographer. But that would not prevent them from performing the duty imposed upon them by the statute; it would only require somewhat more of their time, and some additional labor. This, however, would afford no ground for complaint that the policy of the state law was defeated or its operation impeded, and as regards the judge, he, as a municipal officer holding and enjoying the emoluments of an office created by the charter, could not with any consistency complain of a charter provision defining his duties. I can see no objection in any point of view to the charter provision. There is no real conflict between it and the state law; its utmost effect in any contingency being to compel an examination in San Francisco to be conducted in one of two alternative methods equally legitimate and effective and differing only in point of convenience and expense—a consideration peculiarly affecting the local taxpayers, and in that sense a municipal affair.

As to the competency of a municipal charter to regulate the compensation of municipal officers for the performance of all duties, including those devolving upon them under the general laws of the state, the case of *Matter of Dodge,* 135 Cal. 512, is conclusive. In that case it was not only held that the compensation of the assessor, payable out of the municipal treasury, could be fixed by the city charter, it was even held that a compensation allowed him by the general law out of the state funds, for services rendered exclusively for the benefit of the state revenue, could be taken away and covered into the local treasury for the benefit of the municipal salary fund. So long as that decision stands the right of the freeholders to fix the compensation of all municipal officers cannot be questioned. The stenographer appointed to report the proceedings at a felony examination is an officer—he must qualify by taking the oath of office—and in a consolidated city and county he is a municipal officer, and his compensation for all duties is subject, like that of the police judge, to regulation by the charter.

Rehearing denied.