[Civ. No. 425.   First Appellate District.—August 13, 1907.]

J. F. DINAN, Petitioner, v. SUPERIOR COURT, etc., and J. M. SEAWELL, Judge Thereof, Respondents.

SAN FRANCISCO CHARTER—REMOVAL OF CHIEF OF POLICE FOR MISCON-DUCT—CHARTER METHOD EXCLUSIVE—PENAL CODE SUPERSEDED—PROHIBITION.—The freeholders' charter of the city and county of San Francisco, adopted in pursuance of the constitution, and approved by the legislature, provides an exclusive mode of procedure for the removal of the chief of police for misconduct in office. The provisions of the charter supersede the provisions of the Penal Code conflicting therewith, and prohibition will lie to restrain the superior court from proceeding under the Penal Code to oust the chief of police for alleged misconduct in office.

ID.—MUNICIPAL OFFICER—REMOVAL A MUNICIPAL AFFAIR.—The chief of police is only a municipal officer, whose duties pertain to the city, and his removal is a municipal affair that concerns only the municipality.

PETITION for writ of prohibition to the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Robert B. McMillan, and Nathan C. Coghlan, for Petitioner.

Robert W. Harrison, for Respondents.

COOPER, P. J.—This is an application for a writ of prohibition against the superior court of the city and county of San Francisco and Hon. J. M. Seawell, one of the judges thereof, to arrest the trial of the defendant as being in excess of the jurisdiction of the superior court.

The petitioner sets forth in his petition that the city and county of San Francisco is a municipal corporation governed by a freeholders' charter, which was ratified and approved by the legislature of the state, January 26, 1899; that he is and was, at all times mentioned in the petition, the duly appointed and acting chief of police of said city and county, pur-

suant to the provisions of the said charter.  That in June, 1907, the grand jury of the said city and county of San Francisco presented an accusation in writing against petitioner, in which it is alleged that he has been guilty of willful and corrupt misconduct in office in connection with certain matters and things stated in the petition.  The accusation concludes with a prayer that petitioner be removed from the said office of chief of police of said city and county in accordance with the provisions of sections 758 to 772 of the Penal Code of the state.  It is further alleged that the said superior court and said Hon. J. M. Seawell, one of the judges therof, are threatening to, and will unless restrained by this court, proceed to the trial of the petitioner upon said accusation, and that he has no plain, speedy and adequate remedy in the ordinary course of law.

The defendant demurred to the petition, and on argument declined to answer, so the facts stated in the petition will be regarded as true in discussing the case.  The question for determination therefore is as to the power of the superior court to remove the petitioner from office under the provisions of the Penal Code, the charter of the city and county of San Francisco having made provision for such removal.

The sections of the Penal Code by which it is claimed the proceedings are justified are the following:

"758. An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed.

"759. The accusation must state the offense charged, in ordinary and concise language, without repetition."

"766. If the defendant pleads guilty, or refuses to answer the accusation, the court must render judgment of conviction against him.  If he denies the matter charged, the court must immediately, or at such time as it may appoint, proceed to try the accusation.

"767. The trial must be by a jury, and conducted in all respects in the same manner as the trial of an indictment for a misdemeanor."

"769. Upon a conviction the court must, at such time as it may appoint, pronounce judgment that the defendant be removed from office; but, to warrant a removal, the judgment

must be entered upon the minutes, and the causes of removal must be assigned therein.''

The accusation is authorized by the language of the code against any *municipal officer* for *willful or corrupt misconduct in office.*

The above-quoted sections of the Penal Code have been in force substantially as at present since the enactment of the codes in 1872, and if said sections were the only provisions of law applicable to the case, there would be no difficulty in upholding the proceedings. We must, however, examine other provisions of law in order to determine whether or not this proceeding under the general provisions of the Penal Code can be upheld.

The charter of the city and county of San Francisco, ratified by the qualified voters of the city and county at a special election held on the twenty-sixth day of May, 1898, was adopted by the legislature of the state on January 26, 1899. It is a statute, framed by a board of freeholders, ratified by the voters of the city and county, and finally passed upon and ratified by the people of the state through the legislature, (*People* v. *Williamson*, 135 Cal. 418, [67 Pac. 504].) It contains a delegation of powers, and the powers so delegated are taken from the people of the state, and vested in the municipality. The constitution provides in express terms (art. XI,. sec. 8) that upon the adoption of such charter by the legislature it "shall become the organic law thereof, and supersede any existing charter (whether framed under the provisions of this section of the Constitution or not) and all amendments thereof, and all laws inconsistent with such charter.'' The charter thus became the organic law of the city and county of San Francisco in regard to all municipal affairs, and superseded all laws inconsistent with it. It superseded the provisions of the Penal Code herein cited if such provisions are inconsistent with the provisions of the charter on the same subject. Let us then examine the charter as to the particular question here—the removal of the petitioner as chief of police.

It provides that the police department shall consist of a board of police commissioners, a chief of police, a police force, and such clerks and employees as shall be necessary. The department shall be under the management of a board of police commissioners, consisting of four members, who shall

be appointed by the mayor. The chief of police shall be appointed by the board of police commissioners, and hold office for the term of four years, receiving an annual salary of four thousand dollars. He has control, management and direction of all members of the department, is the chief executive officer, and is chargeable with and responsible for the execution of all laws and ordinances. His duties are set forth in the charter. He is an officer provided for in the charter, selected and appointed as therein provided, with a definite term of office and a fixed salary. The board of police commissioners are given the express power (art. VIII, c. 3, sec. 1) "To appoint, promote, suspend, disrate or dismiss any member of the department in the manner hereinafter provided." It is thereinafter provided (c. VII, secs. 2 and 3) as follows:

"Sec. 2. Any member of the department guilty of any offense, or violation of rules and regulations, shall be liable to be punished by reprimand, or by fine to be fixed by the commissioners, or by dismissal from the department; but no fine shall ever be imposed at any one time for any offense exceeding one month's salary.

"Sec. 3. No member of the department shall be subject to dismissal for any cause; or to punishment for any breach of duty or misconduct therein, except after a fair and impartial trial before the commissioners upon a verified complaint filed with the board, setting forth specifically the acts complained of, and after such reasonable notice to him of the time and place of hearing as the board may by rule prescribe. The accused shall be entitled upon such hearing to appear personally and by counsel; to have a public trial, and to secure and enforce free of expense to him the attendance of all witnesses necessary for his defense."

Petitioner is a member of the department. The mandate of the charter is that he shall not be subject to dismissal for any cause "except upon a fair and impartial trial before the commissioners upon a verified complaint filed with the board, setting forth specifically the acts complained of, and after such reasonable notice to him of the time and place of hearing as the board may by rule prescribe." The people of the city and county of San Francisco, by their charter, have provided for the office of chief of police, and the method of his appointment. They have also provided a tribunal to hear

charges against him, to try him and to dismiss him. They have not only done this, but they have said that he shall not be dismissed in any other way. The method provided is exclusive. The people had the right under their charter to provide what officers the municipality shall have, their qualifications, their terms of office and the methods of their removal. The chief of police is only a municipal officer. The duties of his office pertain to the city. His removal is a matter that concerns the city and no one else, except indirectly. The sections of the Penal Code above referred to are inconsistent with the provisions of the charter quoted. They provide for a trial in a different forum and by a different method. If the petitioner can be removed in the manner contemplated in this proceeding the provisions of the charter must be set aside. The charter provides that the petitioner shall not be subject to dismissal except by a trial in a certain manner. If the Penal Code can be invoked, he can be removed and dismissed in a different manner and before a different tribunal. Suppose that the petitioner should be tried upon the same charges, both before the commissioners and the superior court, and the commissioners should find the charge untrue, while the court, under the Penal Code provisions, should find it true, and render a judgment of removal, could the judgment of the superior court be enforced? If so, the findings and determination of the police commissioners, the body provided by the charter for the purpose of trying charges against one of the city's own officers, must be set at naught. We do not think such is the law. Of course, if the chief of police should commit an offense against the laws of the state, he would be subject to trial under such laws, and so of every other officer of the city; but the provisions of the Penal Code invoked here deal only with the removal from office for misconduct in office. The removal from office of petitioner concerns only the municipality, and he must be removed as provided for in the charter, if removed at all. The method prescribed by the charter is the method provided by the legislature. It has been the policy of the state, and the tendency of the late decisions and constitutional amendments, to broaden the scope of municipal corporations governed by charters as to their own affairs, to allow them to govern themselves, and to prescribe their own rules and regulations as to affairs which are purely municipal. The city, by adopting its charter, asked to be allowed to appoint.

in its own manner, its chief of police, and to remove him in its own way. It was given such power by the legislature, and the power so delegated no longer remains in the people of the state. Only at the last general election, section 16 of article XX of the constitution was amended to read as follows:

"Sec. 16. When the term of any officer or commissioner is not provided for in this Constitution, the term of such officer or commissioner may be declared by law; and, if not so declared, such officer or commissioner shall hold his position as such officer or commissioner during the pleasure of the authority making the appointment; but in no case shall such term exceed four years; provided, however, that in the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control.''

The amendment consisted of the proviso. The petitioner is an officer of the municipality—governed under a legally adopted charter; and the express mandate of the constitution is that the provisions of the charter as to dismissal from office shall control. To control means to direct, regulate or govern. (Standard Dictionary.) It does not express the idea of repealing, extinguishing or doing away with. (*Byrne* v. *Drain*, 127 Cal. 663, [60 Pac. 433].) The provisions of the charter in regard to the dismissal from office would not control if the petitioner can be removed in the proceeding pending in the superior court. On the other hand, the provisions of the Penal Code would control, in direct opposition to the constitutional amendment.

The views herein expressed have been sanctioned in principle by the supreme court in several cases. In *Croly* v. *City of Sacramento*, 119 Cal. 229, [51 Pac. 323], it was held that the provisions of the charter of the city of Sacramento, conferring power upon the board of trustees to try a municipal officer for incompetency and neglect of duty, were valid. The court said: "It cannot be questioned that the appointment of a superintendent of streets is a matter purely municipal, and which may properly be left to the municipality to be exercised in the manner provided in its charter, and it would seem to follow as a logical sequence that the power to remove an officer so appointed is equally a matter of purely municipal concern.''

In *Fragley* v. *Phelan*, 126 Cal. 383, [58 Pac. 923], the court, in discussing the reasons for the amendment to section 6 of article XI of the constitution by the insertion of the words "except in municipal affairs," said: "It was to prevent existing provisions of charters from being frittered away by general laws. It was to enable municipalities to conduct their own business and to control their own affairs to the fullest possible extent in their own way. It was enacted upon the principle that the municipality itself knew better what it wanted and needed than the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs. . . . This amendment then was intended to give municipalities the sole right to regulate, control and govern their internal conduct independent of general laws; and this internal regulation and control by municipalities comprises those 'municipal affairs' spoken of in the constitution."

In a concurring opinion by Mr. Justice Harrison in the same case, it is said: "A city cannot claim to be exempt from general laws relating to municipal affairs if there is no provision relating to such affairs in the charter under which it is acting, whether such charter is one framed by itself, or was given to it by the legislature. If, in framing its charter, its board of freeholders should make no provision for a public library, or for the improvement of its streets, the general laws upon those subjects would be operative within that city."

In the case at bar the charter does make provision for the dismissal of the chief of police, and *ex industria* says he shall be dismissed in no other manner. In *Byrne* v. *Drain*, 127 Cal. 663, [60 Pac. 433], it was held that an assessment under the general law was void where the charter of the city of Los Angeles provided a method of making such assessment. The court in determining the matter said that the primary question was whether "at the time of the institution and prosecution of these proceedings the provisions of the city charter or the provisions of the statutes of 1889 constituted the controlling law. If the latter control, then the proceedings are admittedly valid; if the former, then the proceedings are void upon their face."

In *People* v. *Williamson*, 135 Cal. 415, [67 Pac. 504], it was held that where the provisions of a charter are purely municipal in their character, any code provisions inconsistent there-

with are to that extent superseded by the charter. The court said: "The charter supersedes all laws inconsistent therewith."

In *Elder* v. *McDougald*, 145 Cal. 740, [79 Pac. 429], it was held that under section 8½ of article XI of the constitution, placing police courts under charter control, and authorizing the charter to fix the compensation of attaches, the power given by the charter of the city and county of San Francisco to the police judges to appoint stenographic reporters (whose compensation and duties are prescribed by the charter) is exclusive, and supersedes the provisions of section 869 of the Penal Code, so that a police judge, acting as a committing magistrate, has no power under that section to appoint another stenographic reporter and fix his compensation as a charge upon the municipal treasury. The opinion is an instructive one, and gives as a reason for the conclusion reached that "Under section 8 [article XI] of the Constitution, it is declared that the provisions of a Charter authorized by that constitution shall supersede all laws inconsistent with it."

From the above authorities it seems clear that all general laws inconsistent or in conflict with a charter provision must give way to the charter.

It was held by this court in the late case of *Ex parte Sweetman*, 4 Cal. App. 601, [90 Pac. 1069], that a conflict exists between an ordinance of a municipality and the general law in all cases where the same acts that are punishable under the ordinance are punishable under the general law.

The only case relied upon by respondents—and which at first blush seems to lend countenance to their contention—is *Coffey* v. *Superior Court*, 147 Cal. 525, [82 Pac. 75]. That case was in relation to an accusation in writing by the grand jury against the chief of police of the city of Sacramento under the Penal Code. It was decided before the amendment to section 16 of article XX of the constitution, and appears to have been decided upon the peculiar provisions of the charter of the city of Sacramento. The court said that the scheme for the removal of delinquent officials appeared to be incomplete, and that it was made the duty of the mayor, upon having knowledge of willful neglect of duty or official misconduct, to lay the matter before the board of trustees, the city attorney, or the *district attorney* "in order that the public interests may be protected and the person in default be proceeded

against according to law." The opinion states: "There is nowhere in the charter any provision which in terms confers exclusive jurisdiction upon the board of trustees to proceed against and remove municipal officers, nor is there apparent in any of the charter provisions an intention that its provisions should supersede the provisions of the general law as found in the sections of the Penal Code relative to the removal of delinquent officials from office."

In the case at bar we have the mandatory provision of the charter that petitioner shall not be subject to removal except after a fair and impartial trial "before the commissioners," and the constitutional provision that the provisions of the charter shall control with reference to the dismissal from office. The provisions of the charter cannot *control* if the proceedings in the superior court can be allowed to control. It is our duty to enforce the charter and its provisions if we can do so. It is a special grant of power, for a particular municipality, and pertaining to a particular subject.

Let the writ be made peremptory, and the superior court of the city and county of San Francisco, and Hon. J. M. Seawell, one of the judges thereof, be absolutely restrained from any further proceedings in said matter.

Kerrigan, J., and Hall, J., concurred.