[Civ. No. 2360.    Second Appellate District.—June 14, 1917.]

MARTIN F. BETKOUSKI, Petitioner, v. SUPERIOR
COURT OF THE COUNTY OF LOS ANGELES et al.,
Respondents.

MUNICIPAL CORPORATIONS—REMOVAL OF OFFICERS—INCONSISTENT MODES
OF PROCEDURE—CHARTER CONTROLLING.—Where, in acts of the legis-
lature and in the provisions of municipal charters, there are set
down modes of procedure for the removal of officers which are in-
consistent with each other, the charters will control.

ID.—CHARTER OF LOS ANGELES — ADOPTION OF RECALL PROVISIONS —
PREVIOUS METHOD FOR REMOVAL NOT SUPERSEDED.—The provision of
section 18 of the charter of the city of Los Angeles, that if any
officer of the city during his term of office shall vote on or partici-
pate in any contract or transaction in which he is interested, he
shall, upon conviction, forfeit his office, was not superseded by the
adoption of the recall provisions of such charter, but such section is
to operate concurrently with the recall provisions of the charter.

ID.—CHARGE AGAINST OFFICER OF CITY OF LOS ANGELES—JURISDICTION.
A charge made against a member of the council of the city of Los
Angeles for a violation of the provisions of section 18 of its charter
is not triable in the police court of that city, but must be tried in
the superior court on an accusation lodged against such officer under
sections 758 to 772 of the Penal Code.

APPLICATION for a Writ of Prohibition originally made
to the District Court of Appeal for the Second Appellate
District to restrain the Superior Court from proceeding with
the trial of petitioner under an accusation.

The facts are stated in the opinion of the court.

Oscar Lawler, and A. I. McCormick, for Petitioner.

Thomas Lee Woolwine, District Attorney, and Geo. E.
Cryer, Chief Deputy District Attorney, for Respondents.

WORKS, J., *pro tem.*—This proceeding was instituted to
restrain respondent from going forward with the trial of peti-
tioner under an accusation presented by the grand jury pursu-
ant to the provisions of sections 758–772 of the Penal Code.
Petitioner is a member of the city council of the city of Los
Angeles, and the accusation charges him with a violation of

the provisions of section 18 of the charter of the city, and demands his removal from office. Section 18, so far as it is material to this controversy, reads as follows:

"No member of. the Council shall be financially interested, directly or indirectly, in any contract, sale or transaction to which the city is a party. No city official shall vote on or participate in any contract or transaction in which he is directly or indirectly financially interested. No city official shall be financially interested, directly or indirectly, in any contract, sale, or transaction to which the city is a party and which comes before said official, or the department of the government with which he is connected, for official action. If any officer of the city shall, during the term for which he was elected or appointed, so vote or participate, he shall, upon conviction thereof, forfeit his office and be punished for misdemeanor."

This litigation presents, among other points, the principal question whether, in order to effect the removal of a member of the council under section 18 of the charter, resort may be had to the procedure by accusation and trial under the sections of the Penal Code already mentioned. Section 758 provides that "An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed," and the sections following it outline the procedure to effect a removal pursuant to the accusation, including a trial by jury in the superior court.

The petitioner premises the specific points presented by him upon a citation of the provisions of the Constitution and of the decisions of the courts, all indicating a state policy looking toward a complete exercise of the right of local self-government by charter cities, including the right to appoint, elect, recall, and remove their officers. This premise may be conceded, and its existence is not denied by the respondent.

The petitioner next asserts that the city of Los Angeles has, to use his own language, "assumed to herself every vestige of municipal power to the very last atom." This statement, too, may be taken as true, but with a limitation: We will assume, for the sake of argument, that the city has, by its charter, taken unto itself the right to exercise every municipal function which under the Constitution it may exercise, and which does not require, from its very nature, the installa-

tion of a special system or plan for its exercise. There are many governmental functions which are capable of use only through the erection preliminarily of special machinery through which they may operate. For instance, however broad the powers of a city may be, under the provisions of its charter, its inhabitants cannot, under that instrument alone, legislate by means of the initiative unless the charter presents a specific plan for the exercise of the right; and this will be so, necessarily, even if the instrument provides in so many words that the people may legislate through the initiative. Many other instances of a similar nature might be cited.

But let us proceed to the consideration of other questions which may be regarded as somewhat preliminary to the main question in the case. The petitioner contends that where, in acts of the legislature and in the provisions of municipal charters, there are set down modes of procedure for the removal of officers which are inconsistent with each other, the charters will control, and cites *Dinan* v. *Superior Court*, 6 Cal. App. 217, [91 Pac. 806], *Craig* v. *Superior Court*, 157 Cal. 481, [108 Pac. 310], *Gibson* v. *Civil Service Commission*, 27 Cal. App. 396, [150 Pac. 78], and *Spader* v. *Rolph*, 29 Cal. App. 774, [156 Pac. 977]. There can be no doubt either of the existence or of the propriety of the rule. It is but a part of the state policy already mentioned as contemplating a full measure of the right of local self-government in cities, and the particular point has found expression in the Los Angeles charter itself, as petitioner points out. Section 196 provides that all elective officers, to which class the members of the council belong, "shall, except as otherwise provided in this charter, serve for two years, and until their successors have been elected and qualified." But the existence of this charter provision has nothing whatever to do with the question whether the sections of the Penal Code may be invoked to establish the method of a removal from office the cause for which is prescribed by section 18 of the charter, for the last-mentioned section clearly and fully meets the challenge laid down in section 196 by providing, in effect, that one guilty of the acts denounced by its provisions shall not "serve for two years." Section 18 furnishes the exception called for by section 196, and there is certainly nothing in the latter, considered alone, which forbids our searching outside the charter for the machinery through which to make the provisions of

section 18 effective. Section 196 does not necessarily relate to the question of mode of removal, as distinguished from cause for removal, and as section 18 provides a complete scheme for removal so far as cause is concerned, we are bound to find a mode somewhere, if it be possible so to do. If no mode be pointed out in the charter and one can be found elsewhere, *Dinan* v. *Superior Court,* 6 Cal. App. 217, [91 Pac. 806], and the other cases cited with it, do not stand in the way of resort to such a mode, for they refer only to the dominance of charter provisions over conflicting statutory provisions.

All laws for the removal of public officers are properly divisible into two parts: first, a cause for removal must be either stated, or understood; second, a method of effecting the removal must be specifically provided. The charter of Los Angeles includes at least two systems under which it is attempted to provide for removals. One of these is the recall, as to which the cause for removal is merely understood to exist in the mind of the individual elector and is not assumed to be stated in the charter, but the method of exercising the right is provided with great care. The other plan for removal is that set forth in section 18. There the cause of removal is distinctly stated; but what of the method of the exercise? Where is it to be found? A method of effecting a removal from office is required, from the very nature of things, to be specifically provided, as truly as the same thing may be said of the method of exercise of the right of initiative or of the recall, and its exercise cannot, of course, be predicated upon mere general declarations of municipal power, however broad.

The petitioner insists that the two schemes for removal from office under the charter are cumulative, and that the right to remove for the causes stated in section 18, whatever may be the method, is superseded by the right to remove by the recall, and we must dispose of this point before we answer the question propounded toward the close of the preceding paragraph. As a part of the argument on this question of cumulative remedies, it is pointed out that proceedings for removal under section 18 might be instituted in a given case, that in the same case and for the same cause resort to the recall might be had, and that the results under the two methods of pro-

cedure might be different and opposed to each other, and in aid of the argument the petitioner cites *Hodges* v. *Tucker,* 25 Idaho, 563, [138 Pac. 1139]. That case does decide that cumulative remedies for removal for the same cause are not to be tolerated, as they are likely to result in opposite conclusions; but it may be disregarded, for the cumulating remedies there in question were presented, respectively, by a special act operating in the nature of a charter and by a general act of the legislature; and, further, the special act contained provisions showing an intention upon the part of the legislature to make it a complete and exclusive plan for the government of cities coming within its scope. This case, then, presents a showing of conflict between distinct systems of legislation, is akin to our own decisions as to the effect of conflicting charter and statutory provisions, and is, after all, to be classed with *Dinan* v. *Superior Court,* 6 Cal. App. 217, [91 Pac. 806], which it, indeed, cites, and the other cases like it. It is to be remembered that the present litigation exhibits an instance of alleged cumulative or conflicting provisions for removal found in the same scheme of legislation, the charter itself. But for the fact that they were adopted at different times, section 18 and the recall provisions of the charter stand upon the same footing. We are therefore really asked to determine, so far as this particular question is concerned, whether there is such an inconsistency between the two that a repeal of one by implication results from the adoption of the other. We cannot think that it does. Section 18 contemplates a judicial investigation into certain specific charges which are to be made, in form, against an alleged erring officer. The recall provides for the removal of officers at the will of the electors of the municipality, upon reasons, good or bad, satisfactory to the individual consciences of the electors. Even if a recall petition should state, as reason for recall, the same matters which might be made the subject of investigation under section 18, any elector might vote for recall upon entirely distinct and different reasons appearing to him to be equally or more cogent and convincing. If a recall should result at the polls in such a case and, at or near the same time, an acquittal of the same officer should result from an investigation under section 18 of the charges specified in the recall petition, it could not be said and could never be shown that the results were conflicting or even inconsistent. The

judicial inquiry would have ended an investigation into
specific charges against the officer.   The recall election would
have thrown open the entire range of the official life of the
individual, and made his incumbency of the office depend
upon the accumulated judgment of the electorate based upon
not only his minutest official acts; but also upon his private
reputation and character.   If a city official were proceeded
against under both section 18 and the recall provisions of
the charter, the recall petition containing "a general state-
ment of the grounds for which such removal is sought" (Char-
ter, sec. 198p, subd. 1), in which were set forth substantially
the charges made under section 18, and the result was favor-
able to the officer in each proceeding, he would retain the
office, but, on the other hand, if it were unfavorable in either,
a forfeiture of the post would result.   These views, in addi-
tion to their consonance with reason, find support in *Hilzinger*
v. *Gillman,* 56 Wash. 228, [21 Ann. Cas. 305, 105 Pac. 471],
and in the circumstance immediately to be mentioned.

That the electors of Los Angeles never intended the recall
provisions of the charter to supersede section 18 is apparent
for another reason.   It is true that section 18 was in the char-
ter at the time of its original adoption in 1889, but its form
was then far different from that of the present section.   It
then denounced but a part of the acts which are by the present
enactment made wrongful and declared that upon a conviction
of the officer, "besides the penalty that may be imposed by a
court of competent jurisdiction, the council shall declare the
office vacant, and any person convicted of a violation of this
section shall be forever disqualified from holding any office
under this charter."   The provisions for a recall were first
imported into the charter in 1903, and section 18 remained
in its original form in the interim and also afterward until
1911, when, at the same time with the adoption of extensive
amendments of the recall provisions, the people voted an
amendment which made the section exactly what it is now
as to the question of penalty, although it was again amended
and thus put into its present form throughout in 1913.   This
continued solicitude for the amendment and, consequently,
for the existence of section 18 forces a conviction that it is
operative, concurrently with the recall provisions of the char-
ter, for the removal of city officials, provided a mode may be

found through and by which the causes for removal named in it may be made beneficially effective.

Petitioner's next contention presents the main question in the case. It will be noted that, after denouncing the acts which may occasion a removal from office, section 18 is to the effect that the erring officer "shall, upon conviction . . . forfeit his office and be punished for misdemeanor." The peculiar character of this clause will be noted at once. It is so worded that it is apparently susceptible of various constructions. Is a forfeiture the only punishment prescribed by the section, or is a fine to be exacted and an imprisonment directed, in addition? Upon the settlement of this question may depend the solution of the problem whether an action resulting from a charge under the section is to be tried in the superior court or in some other forum. The petitioner contends that the section declares the commission of the denounced acts the commission of an ordinary misdemeanor, with a forfeiture of office as an incident, and that charges under it are triable only in the police court. This contention is presented in two branches, the first of which is that the police court of Los Angeles is controlled, in the exercise of its jurisdiction, by provisions of the city charter. In this branch of petitioner's argument he presents a complete scheme for removal from office under the charter, the cause of removal being found in section 18, the method being pointed out in the provisions concerning the jurisdiction of the police court. These latter provisions are found in section 101, where it is provided that the police court shall "have exclusive jurisdiction of . . . all misdemeanors punishable by fine or by imprisonment in the county jail or by both." Under this language charges made pursuant to the provisions of section 18 cannot be tried in the police court unless offenses thereunder are punishable by fine or imprisonment, or by both. The second branch of the argument on this question is to the effect that offenses under section 18 are triable in the police court pursuant to the provisions of an act of the legislature passed in 1913, relating to the jurisdiction of police courts in cities of the first and one-half class, which includes Los Angeles, and found in Statutes of 1913, page 469. Under this branch of the argument petitioner abandons much that he has said concerning the supremacy of charter provisions over statutory enactments in the matter of removals from office, and presents

a scheme for removals upon cause stated in the charter and
by a method of removal prescribed in the statute.    The juris-
diction of the police court under the act of 1913 is the sub-
ject of section 2.    So far as the section is now of interest it
provides that the court "shall have exclusive jurisdiction of
all misdemeanors punishable by fine or by imprisonment, or
by both such fine and imprisonment, committed in the city
where such police court is held."    Section 3 of the act pro-
vides that each of the police judges "shall be and have the
powers of a police magistrate and shall have power and juris-
diction . . . to try all charges of misdemeanor offenses com-
mitted within its jurisdiction," etc.    The petitioner contends
that the language of this latter section confers upon the police
court jurisdiction of misdemeanor charges of every nature,
but the act cannot receive such a construction.    The jurisdic-
tion of the court over misdemeanors is fixed by section 2 and
that jurisdiction, in so far as it relates to misdemeanors, is
limited to the kinds of misdemeanors which are "punishable
by fine or by imprisonment, or by both such fine and imprison-
ment."    Section 3 was plainly framed for the purpose of
conferring upon each of the judges, when acting alone, the
power to exercise the full jurisdiction of the court; and its
language to the effect that each of them may "try all charges
of misdemeanor offenses committed" within the jurisdiction
of the court is perforce limited by the provisions of section 2
to the effect that the jurisdiction is only over misdemeanors
punishable by fine or imprisonment, or by both.    We do not
hold, however, that other parts of section 3 may not confer
jurisdiction as to matters, other than misdemeanors, not men-
tioned in section 2; but, certainly, the two sections must be
read together in determining the extent of the jurisdiction of
the court over misdemeanors, and such a reading impels the
conclusion we have just announced.    Therefore, upon both
branches of petitioner's argument contending for a jurisdic-
tion in the police court over the offense with which he is
charged the situation is the same.    That court cannot, in any
event, exercise jurisdiction over charges under section 18 of
the charter unless the "misdemeanor" therein mentioned is
punishable by fine or by imprisonment or by both.

The respondent contends that the only punishment possible
under section 18 is a forfeiture of office, and the history of the
section casts much light upon the question.    We have already

seen that, as it originally stood in 1889, the section provided for a forfeiture of office, for a disqualification to further hold office; all this, however, "besides the penalty that may be imposed by a court of competent jurisdiction." By the amendment of 1911 the people of the city withdrew the language just quoted, and we are bound to assume that they did so with a substantial purpose in view. The amendment of that year provided that an officer convicted under the section should "forfeit his office and be punished for misdemeanor," the amendment of 1913 was identical as to the portion of the section now in question, and so it has ever since remained. The purpose of the people, in 1911, in removing from the section the reference to the ordinary penalty to be imposed by a court of competent jurisdiction can have been only to dispense with such penalty. It is reasonable to suppose, aside from the evidence furnished by the amendment, that such was their intention. The usual penalty for the commission of a misdemeanor is insignificant when compared with the forfeiture of office which may follow a conviction under the section. In 1911 Los Angeles had become a city with a population in excess of three hundred thousand souls, and the penalty of a forfeiture of an important office under its government, together with the consequent fall of the incumbent in the estimation of those who had placed him there, had become a penalty indeed. The ordinary punishment for a misdemeanor was hardly mentionable in connection with it. We are convinced that, at least from 1911 forward, the "misdemeanor" meant by the section was not punishable by fine or imprisonment; that it was of the character usually referred to as misdemeanor in office or misconduct in office; in fact, that the intention of the people in adopting it was as if it read that an erring officer should "forfeit his office and thus be punished for a misdemeanor in office." In legal effect, taking both its history and its phraseology—which latter is susceptible of such a construction, irrespective of the question of history—it does so read.

We have, then, reached the conclusion that charges made pursuant to the provisions of section 18 are not triable in the police court, and petitioner's contention that such is the place of trial is at an end. There is now no difficulty in the way of determining that the petitioner must be tried in the superior court and upon the accusation lodged against him

under the sections of the Penal Code, section 758 and those following it. There is no conflict between those sections and the charter, for they occupy a field which it does not invade. There is apparently no other procedure than that outlined in the sections mentioned to which resort may be had in order to render section 18 of the charter effective, and the language of section 758 expressly countenances such a resort, for it provides for the presentation by the grand jury of "an accusation in writing against any . . . municipal officer, for willful or corrupt misconduct in office."

The alternative writ of prohibition heretofore issued is dismissed and the prayer for a peremptory writ is denied.

Conrey, P. J., and James, J., concurred.