[No. 8137. Department One. December 9, 1909.]

George Hilzinger, *Appellant*, v. C. C. Gillman, *as City Comptroller, et al., Respondents.*[1]

Municipal Corporations — Officers—Actions—Parties—Intervention—Taxpayers. In an action by a councilman to enjoin the city clerk from certifying to an elector's petition for his recall, a taxpayer has no interest entitling him to intervene under Bal. Code, § 4846, it not being alleged that the clerk would not defend the action.

Municipal Corporations—Charter—Construction—Recall and Legislation. There is no conflict between a provision of a city charter contemplating a recall of a councilman, when his action is not responsive to the will of the majority, and another section providing for his removal by the city council for specified causes.

Same—Recall Provision—Authority For. A provision in a city charter adopted by a city of the first class under Const., art. 11, § 10, for the recall of a city councilman, is authorized by Bal. Code, § 740, providing that the city council shall have the powers, and shall be elected at the times, in the manner, and for the terms prescribed in the charter.

Same—Councilman—Term of Office—Recall. A councilman elected for a definite term fixed by the city charter, which also contains a provision for his recall by a vote of the electors of his ward, is elected for a fixed term, subject to a condition subsequent.

Same—Term of Office—Recall—Impeachment. Const., art. 5, § 3, providing that all officers shall be subject to removal for misconduct in office, has no application to a removal by the recall provided for in the city charter, and the advisability of such recall is a political and not a legal question.

[1]Reported in 105 Pac. 471.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered February 11, 1909, dismissing an action to enjoin the city clerk from certifying to an elector's petition for a recall, after sustaining demurrers to the complaint, and overruling a demurrer to a petition in intervention. Affirmed as to the demurrers to the complaint and reversed as to the demurrer to the complaint in intervention.

*Coleman & Fogarty*, for appellant.

*W. G. McLaren*, for respondents.

Gose, J.—This action was instituted by the appellant to enjoin the city comptroller, who is *ex officio* city clerk of the city of Everett, a city of the first class, from certifying to the city council that a certain electors' petition was sufficient and in conformity with the provisions of the city charter. The complaint avers that the appellant has been duly elected as a councilman to represent the sixth ward in the city, for the term ending the first Tuesday after the first Monday in January, 1910; that he qualified and is acting as such; that the respondent Gillman is the comptroller and *ex officio* city clerk; that certain electors, in accordance with section 281 of the city charter, presented to and filed with the comptroller a petition, asking for the recall of the appellant as councilman, for the alleged reason that he is using the influence of his position to revive a certain franchise to the prejudice of the city; that the respondent comptroller will certify to the city council that the petition is sufficient, unless restrained by an order of the court, and that, if a certificate is filed, the council will immediately order an election for the purpose of choosing a successor to the appellant. The charter of the city is attached to, and made a part of, the complaint.

The respondent Hulbert was permitted to intervene as an elector and a taxpayer in the city. The appellant demurred to the petition in intervention, and the intervener and the respondent comptroller severally demurred to the complaint

on the ground that it does not state facts sufficient to constitute a cause of action. The appellant's demurrer was overruled, and the demurrers of the respondents were sustained. Whereupon, the appellant having elected to stand upon his complaint, the action was dismissed, and the appeal was taken from such judgment.

The appellant first contends that the intervener has no such "interest in the matter in litigation" as to entitle him to intervene under the provisions of Ballinger's Code, § 4846. We think he is right in this contention. Without undertaking to define in what cases a party may intervene, we are satisfied that an elector and taxpayer has no such interest in the matter in litigation in this case as to warrant an intervention. There is no allegation in his petition that the comptroller will not appear and defend the action. In *Westland Publishing Co. v. Royal*, 36 Wash. 399, 78 Pac. 1096, a suit against a school district upon an alleged contract, it was held that a resident and a taxpayer in the school district could not intervene. See, also, Pomeroy, Remedies & Remedial Rights (2d ed.), § 424; 17 Am. & Eng. Ency. Law (2d ed.), pp. 180-183; 11 Ency. Plead. & Prac., 446, 447. The demurrer to the complaint in intervention should have been sustained.

In accordance with the power contained in § 10, art. 11, of the constitution and the legislation enacted thereunder (Laws 1890, p. 215 *et seq;* Bal. Code, § 735), the city of Everett, having a population in excess of twenty thousand, adopted a charter for its own government. Under the provisions of § 281 of the charter, certain electors of the sixth ward of the city, the ward represented by the appellant, filed with the comptroller a petition for the recall of the appellant and the election of his successor. This section, so far as is necessary to a correct understanding of the case, provides:

"Sec. 281. The holder of any elective office may be removed at any time during his term by the electors qualified to vote for a successor of such incumbent. The procedure to

effect the removal of an incumbent of an elective office shall be as follows: A petition, signed by voters entitled to vote for a successor to the incumbent equal in number to at least twenty-five per centum of the entire vote for all candidates for the office, the incumbent of which is sought to be removed, cast at the last preceding general municipal election, demanding an election of a successor of the person to be removed, shall be filed with the city clerk; provided, that the petition sent to the council shall contain a general statement of the grounds for which the removal is sought. ·. . . If the petition shall be found to be sufficient, the clerk shall submit the same to the council without delay; and thereupon the city council shall order, and fix a date for the holding of such election, . . . Any person sought to be removed may be a candidate to succeed himself, . . . At such election if some other person than the incumbent receives the highest number of votes, the incumbent shall thereupon be deemed removed from the office upon the qualification of his successor."

Section 31 provides that, "All officers elected at said first election as herein provided shall hold office until the first Tuesday after the first Monday in January, 1910, unless removed as in this charter provided." Section 32 provides that, in all subsequent elections, "the term of office of every elective officer then elected shall then and thereafter be two years, unless removed as in this charter provided." Section 25 provides that, "Any elective officer other than a member of the city council may be suspended by the mayor and removed for cause by the city council." It then provides that inability or wilful failure properly to perform his duties, or the commission of a crime or misdemeanor involving moral turpitude, absence from the city for twenty days without consent, open failure or refusal to discharge his duties, the habitual use of intoxicating liquors to excess, or any permanent disability preventing the proper discharge of his duties, shall constitute cause for the removal of any elective officer; but that "the city council only shall have power to suspend or remove a member of that body," which may be done for

any of the enumerated causes. Ample provision is made in the charter for direct control over the city council and its legislation by the initiative and referendum.

Appellant's first contention is that there is a conflict between the provisions of §§ 25 and 281 of the charter, in relation to the removal of a member of the city council, and that the former, being specific in its nature and relating to a particular subject, must control. A reading of the two sections in the light of the charter as an entirety discloses a clear purpose upon the part of the electors of the city to reserve to themselves the power to control the entire legislative and executive policy of the city. Section 282 provides that twenty per centum of the electors may propose and submit an ordinance to the council, and that it shall either pass the ordinance without alteration within a fixed time or submit it to a vote of the people. Section 283 provides that no ordinance passed by the council, except when otherwise required by the general laws of the state or by the provisions of the charter, except an ordinance for the immediate preservation of the public peace, health, or safety, which contains a statement of its urgency and is passed by a two-thirds vote of the council, shall go into effect before ten days from its final passage; and if during the ten days a petition, signed by ten per cent of the electors, be presented to the council, the ordinance shall be suspended and the council shall reconsider it, and if it is not entirely repealed it shall be submitted by the council to the vote of the electors and shall only become effective upon receiving the sanction of a majority vote. It is ·apparent that there is no real conflict between the two sections. Section 25 provides for a summary removal of an elective officer for certain specific causes, whereas § 281 contemplates a recall of the officer at any time that his official conduct is not responsive to the wish or will of a majority of the electors in his precinct or ward. Whilst this section provides that the reason for the recall shall be stated in the petition, the charter does not provide that any specific reason shall be necessary

or controlling.   The whole scheme or system of the charter
makes it apparent that the right of recall of elective officers
was reserved to the people, to be exercised at any time the
public interest was thought to require it.   We have adverted
to the fact that provision is made whereby the incumbent may
submit his official conduct to a vote of the people, and that
if he receives a vote of confidence he continues in office.   His
successor is elected and inducted into office under the recall
provision only upon the failure of the incumbent to secure
an indorsement of his stewardship by a majority of the elec-
torate.   Like the British ministry, an elective officer under
the charter is at all times answerable to the people for a
failure to meet their approval on measures of public policy.

It is next urged that there is neither constitutional nor
legislative authority for the recall provision.   Section 10,
art. 11, of the constitution provides that, "Any city con-
taining a population of twenty thousand inhabitants or
more shall be permitted to frame a charter for its own gov-
ernment consistent with and subject to the constitution and
laws of this state."   We need not inquire whether this pro-
vision is self-acting, as the legislature has made ample pro-
vision for giving it effect.   Laws 1890, p. 215 et seq.   Our
code (Bal. Code, § 740) which is § 6 of the Laws of 1890,
provides that, in cities of the first class the mayor and mem-
bers of the city council shall have the powers, shall be elected
at the times, in the manner, and for the terms prescribed in
the charter.   As was said in Good v. Common Council of
San Diego, 5 Cal. App. 265, 90 Pac. 44:

"The fixing of the tenure of office of the officers of a mu-
nicipality subject to removal by the body that elected them
is comparatively new in our system of government, and the
interpretive branch of the law is in rather an undeveloped
state on the subject."

In discussing this question, it is pertinent to inquire for
what term was the appellant elected.   This inquiry is an-
swered by the charter, and the answer is that he was elected

to hold office until the first Tuesday after the first Monday in January, 1910, unless removed for cause or recalled in the manner provided therein. His term, while in a measure fixed, was subject to the condition subsequent that twenty-five per cent of the electorate of the ward from which he was elected could by petition express their disapproval of his official action upon one or more measures of local policy, and demand that he be sustained by a vote of confidence or retire. Our code (Bal. Code, § 742) provides that the act empowering cities of the first class to adopt a governing charter shall be liberally construed for the purpose of carrying out the objects for which the law was intended. Both the constitution and the general law recognize that large, growing cities should be empowered to determine for themselves, and in their own way, the many important and complex questions of local policy which arise, and it is only when some act in the execution of that policy conflicts with the general law or contravenes the constitution, that the act can be questioned. We do not think that the official act sought to be restrained exceeds the power conferred upon the city by the general law or conflicts with it. The following cases are in harmony with this view: *Good v. Common Council, supra; In re Pfahler,* 150 Cal. 71, 88 Pac. 270, 11 L. R. A. (N. S.) 1092; *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259; *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609; *St. Louis v. Western Union Tel. Co.,* 149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810; *Matter of Carter,* 141 Cal. 316, 74 Pac. 997; *Attorney General v. Jochim,* 99 Mich. 358, 58 N. W. 611, 41 Am. St. 606. Whether we treat the power sought to be exercised as being derived from the constitution subject to the control of the general law, or as derived from the latter, the result will be the same. If derived from the constitution, it does not conflict with the general law, and if derived from the latter it is within its spirit and purpose.

It is finally urged that the recall provision in the charter is violative of § 3, art. 5, of the constitution, which provides

that, "All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." This contention has been disposed of by what we have said concerning the several sections of the charter. The people of the city of Everett in framing the charter intended that their representatives should be held strictly amenable to both the existing and changing public sentiment on all local measures, and that if the official conduct of any elective officer failed at any time to so respond, he was subject to recall if the majority of the electorate in his district so determined. The appellant accepted the trust subject to this power in his constituency, and the duration of his term of office is dependent upon the wish of the majority as expressed at the polls. The removal sought is not of the character provided for in the constitution. Whether the interests of the city will be better subserved by a ready obedience to public sentiment than by a courageous adherence to the views of the individual officer on questions of public concern, is a political and not a legal question.

The judgment will be affirmed as to the comptroller, and reversed as to the intervener, with directions to sustain the demurrer to his petition.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.