(February 12, 1914.)

## ARTHUR HODGES, Mayor of Boise City, Plaintiff, v. JOHN TUCKER et al., Defendants.

[138 Pac. 1139.]

DISTRICT COURTS—JURISDICTION—MUNICIPALITIES—POWER OF MUNICI-
PALITIES THAT HAVE ACCEPTED AND ADOPTED AS PROVIDED BY LAW
THE PROVISIONS OF CHAPTER 82, LAWS OF 1911—REMOVAL OF OFFI-
CERS OF MUNICIPALITIES.

1. Sec. 7459, Rev. Codes, contains no specific provision relat-
ing to municipal officers, and there is no attempt or intent either
expressed, or from which a presumption could be entertained, to
confer jurisdiction upon the district court to hear and determine a
cause growing out of the violation of a city ordinance, or neglect of
duty to enforce a city ordinance, in cities that have organized and
accepted the provisions of the Black law, chap. 82, Laws of 1911.

2. Secs. 3829 and 3830, Rev. Codes, provide for the creation of
district courts, and sec. 3829 provides as follows: "District courts
are hereby established to be held in each of the counties of this state
which have been or may hereafter be organized by law, for the pur-
pose of hearing and determining all matters and causes arising under
the laws of this state. This court is presided over by district judges
chosen by the qualified electors of their respective districts for a term
of four years."

3. Sec. 20, art. 5 of the constitution of this state provides: "The
district court shall have original jurisdiction in all cases, both at law
and in equity, and such appellate jurisdiction as may be conferred
by law."

4. Sec. 7459 is a general statute which was enacted before the
adoption of the constitution, and its provisions are not incorporated
in the Black law, and therefore it is not in force as to municipalities
organized under such law, and such section does not apply in the
present case, and the provisions of the Black law provide a complete
form of government for cities of the state of Idaho now or here-
after having a population of 2,500 or over, provided that such cities
become organized under an election as provided for in such act.

5. Sec. 7459, Rev. Codes, was a general statute at the time it
was adopted, and does not apply to cities and municipalities of
the state which have the necessary population and have adopted the
Black law by popular vote, and such section is inconsistent with the
scheme devised in and by the Black law, and has no application

and does not control the provisions embraced in chap. 82, Laws of 1911.

6. The Black law, Laws of 1911, p. 280, when considered as a whole, indicates that the legislature in enacting the same intended to provide a system complete within itself so far as the provisions of the act provide, and where it provides a method or means for doing an act, such as the removal of an officer elected under its provisions, it must and was intended to be exclusive of any other remedy provided prior to the enactment of chap. 82, Laws of 1911, and the legislature has provided the recall provision of the Black law as the only and exclusive means, except other provisions which relate to the power of the council in removing an appointive officer provided for in the Black law.

Application in this court for a writ of prohibition restraining and prohibiting Hon. Charles P. McCarthy, one of the judges of the District Court of the Third Judicial District, from exercising jurisdiction in an action brought in said court by John Tucker to remove Arthur Hodges as mayor of Boise City. Application granted and writ issued.

J. B. Eldridge and C. F. Reddoch, for Plaintiff.

Sec. 7459 was a territorial statute at the time the organic act of the territory was adopted; in said act no reference was made to the officers of municipalities. (*Rankin v. Jauman,* 4 Ida. 53, 36 Pac. 502; *Conwell v. Village of Culdesac,* 13 Ida. 575, 92 Pac. 535.)

Secs. 34, 35 and 36 of the Black law provide for the removal of elective officers by the recall. Sec. 47 prescribed a penalty in addition to ouster, to the effect that any officer removed by recall shall not be appointed to any city office or employment within two years after his removal. This constitutes a penalty. Sec. 7459 is inconsistent with the provision for the recall provided in the Black law, in that it provides a different punishment, sec. 7459 providing for the assessment of a fine of $500 in favor of the informant against the ousted officer; the recall provision providing for ouster by recall and disbarment to hold office for two years. (*Dinan v. Superior Court,* 6 Cal. App. 217, 91 Pac. 806.)

There is a vast difference between the functions of an exception and that of a proviso. An exception excepts out absolutely; a proviso defeats conditionally. (*Acker v. Richards,* 63 App. Div. 305, 71 N. Y. Supp. 929; *Waffle v. Goble,* 53 Barb. (N. Y.) 517; *Rowell v. Janvrin,* 151 N. Y. 60, 45 N. E. 398; *Western Assur. Co. v. Mohlman,* 83 Fed. 811, 28 C. C. A. 157, 40 L. R. A. 561; Black, Inter. of Laws, 2d ed., p. 428; 2 Sutherland, Stat. Const., secs. 345, 351, 352.)

The various states which have passed acts similar to the Black law, with the provision for the removal of officers by the recall, have declared or omitted to so declare as to whether or not the remedy is cumulative. Had the legislature intended that the provisions of the Black law should not be the exclusive remedy for the removal of the mayor, it would not have put in the specific exception provided in sec. 2, and it would have declared the remedy to be cumulative. (*Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71.)

There is a growing tendency to permit cities and towns to regulate their local affairs. Why should we invoke one of the strong arms of the law of the state for the purpose of interfering in a purely local matter which concerns Boise City only and which in no wise relates to the enforcement of a state law? (*Conn v. City Council,* 17 Cal. App. 705, 121 Pac. 714, 719; *Good v. Common Council,* 5 Cal. App. 265, 90 Pac. 44; *Hilzinger v. Gillman,* 56 Wash. 228, 21 Ann. Cas. 305, 105 Pac. 471; *State v. Houston* (Neb.), 143 N. W. 796; *Barnes v. Mayor of Chicopee,* 213 Mass. 1, 99 N. E. 464; *Boone v. State,* 170 Ala. 57, Ann. Cas. 1912C, 1065, 54 So. 109; *Mayor etc. v. State* (Miss.), 59 So. 873; *Salter v. Burk,* 83 N. J. L. 152, 83 Atl. 973; *Bonner v. Belsterling* (Tex. Civ. App.), 137 S. W. 1154; *Graham v. Roberts,* 200 Mass. 152, 85 N. E. 1009; *Cole v. Tucker,* 164 Mass. 486, 41 N. E. 681, 29 L. R. A. 668.)

From the foregoing authorities it appears that even in the face of the general declaration in the various commission form government acts that the remedy shall be cumulative, the courts lean strongly toward the doctrine of permitting municipalities to control their own local affairs, and that the remedy

of ouster by summary proceedings relates only to state and constitutional officers, or at least to officials violating some duty imposed upon them by a state law instead of a city ordinance. (*Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692.)

There is no provision in the Black law or under the general law governing cities and villages imposing any duty whatever upon the mayor or city council to enforce the provisions of any state law relative to bawdy-houses or the sale of intoxicating liquors. The court must not only have jurisdiction of the person, but of the subject matter. (*Wayne v. Alspach,* 20 Ida. 144, 116 Pac. 1033.)

The Black law or some other statutory provision must prohibit within its own terms the existence of bawdy-houses and the illegal sale of liquor in Boise City, and then impose upon the mayor and the city council the duty to enforce the state enactment before the mayor could be chargeable with neglect of duty arising under a state law. (*Corker v. Pence,* 12 Ida. 152, 85 Pac. 388.)

Courts will never construe a statute beyond its plain terms so as to bring one within the statute and subject him to a penalty if the law is not such that he is clearly brought within the letter as well as the spirit of the law. (Sutherland, Stat. Const., sec. 356; *Independent School Dist. v. Collins,* 15 Ida. 535, 128 Am. St. 76, 98 Pac. 857.)

The subject of removal of all officers is within legislative control, and where that body prescribes a manner and method of removal, it is exclusive. (*State ex rel. Brandt, Mayor, v. Thompson,* 91 Minn. 279, 97 N. W. 887.)

S. L. Tipton, for Defendants.

The recall under the Black law and the removal of an officer under sec. 7459 are cumulative remedies. (*Chicago, N. W. Ry. Co. v. City of Chicago,* 148 Ill. 141, 35 N. E. 881; *Conwell v. Village of Culdesac,* 13 Ida. 575, 92 Pac. 535; *Dawson v. Superior Court,* 158 Cal. 73, 110 Pac. 479; *State ex rel. Young v. Robinson,* 101 Minn. 277, 112 N. W. 269, 20 L. R. A., N. S., 1127.)

The state law applies to all cities as well as cities operating under special charters. (*In re Ridenbaugh,* 5 Ida. 371, 49 Pac. 12; *Coffey v. Superior Court,* 147 Cal. 525, 82 Pac. 75; *State v. City of Noblesville,* 157 Ind. 31, 60 N. E. 704; *Dawson v. Superior Court, supra; State v. District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103; *Hilzinger v. Gillman,* 56 Wash. 228, 105 Pac. 471, 21 Ann. Cas. 305.)

"Where a new act is couched in general affirmative language and the previous law can well stand without it, and if the language used in the latter act is all in the affirmative language, there is nothing to say that the previous law shall be repealed, and therefore the old and the new law shall stand together." (Black, Interpretation of Laws, 2d ed., 352.)

"Where the design is to give additional protection to a subsisting right and a remedy is provided for its invasion which is not necessarily exclusive of all others, it is considered merely cumulative and the party injured may resort to it or to the means previously allowed for redress." (Black, Interpretation of Laws, p. 86; *Darrow v. People,* 8 Colo. 417, 8 Pac. 661.)

Nowhere in the Black law is it prescribed that the method of recalling officers shall be the sole, exclusive or final method of removal.

The legislature could not make the recall the exclusive remedy if it had expressly stated the same in the act. To do so would violate secs. 13 and 20, art. 5, of the constitution.

The removal of an officer for cause is a judicial power. (*Haggerty v. Shedd,* 75 N. H. 393, 139 Am. St. 725, 74 Atl. 1055; *Dullam v. Willson,* 53 Mich. 392, 51 Am. Rep. 143, 19 N. W. 112; *Coffey v. Superior Court, supra; State v. Chaney,* 23 Okl. 788, 102 Pac. 133; *State v. Harrison,* 113 Ind. 434, 3 Am. St. 663, 16 N. E. 384.)

There is no repugnance between the remedy by recall and sec. 7459, as they are entirely different in their character, the one being exclusively a political remedy and the other a judicial remedy, and neither can interfere with the other in their operations. (*State v. Wells,* 210 Mo. 601, 109 S. W. 758, 763.)

Sec. 7459 is a law in the nature of a police regulation. Its enactment was an exercise of the police power of the state, and to hold that it is repealed, suspended or surrendered to cities operating under the Black law would be surrendering the police power of the state to the cities, which cannot be done. (Cooley, Const. Lim., 6th ed., p. 706.)

There is a presumption against ousting courts of their jurisdiction. (Endlich, Interpretation of Statutes, sec. 151.)

A municipal corporation can exercise no powers but those expressly granted, and Boise City, under the recall provision of the Black law, is assuming by exclusion all the police powers of the state over the municipality with regard to the removal of officers. (*Mantel v. State,* 55 Tex. Cr. 456, 131 Am. St. 818, 117 S. W. 855; *In re Unger,* 22 Okl. 755, 132 Am. St. 670, 98 Pac. 999; *St. Louis v. King,* 226 Mo. 334, 136 Am. St. 643, 126 S. W. 495, 27 L. R. A., N. S., 608.)

The action for the removal of an officer under sec. 7459 is not a penal action. (*Rankin v. Jauman,* 4 Ida. 53, 36 Pac. 502.)

The object is not to punish the officer but to improve the public service. (*Rankin v. Jauman, supra; Territory v. Sanches,* 14 N. M. 493, 94 Pac. 954, 20 Ann. Cas. 109.)

The court has jurisdiction of the person and the subject matter of the action. (*Smith v. Ellis,* 7 Ida. 196, 61 Pac. 695; *Craig v. Superior Court,* 157 Cal. 481, 108 Pac. 310; *In re Shepard,* 161 Cal. 171, 118 Pac. 513.)

The phrase "except as hereinafter provided" is not an exception and has none of the elements of an exception. (*Arnold v. United States,* 147 U. S. 494, 13 Sup. Ct. 406, 37 L. ed. 253; Sutherland, Stat. Con., sec. 351.)

STEWART, J.—This action is an original application in this court for a writ of prohibition to prohibit Hon. Charles P. McCarthy, one of the judges of the district court of the third judicial district of the state of Idaho, from exercising jurisdiction in an action brought in said district court by John Tucker to remove Arthur Hodges, as mayor of Boise City. The action was brought under sec. 7459, Rev. Codes,

upon the ground that Arthur Hodges, as mayor, has failed and neglected, as said mayor, to enforce certain ordinances of Boise City relative to the keeping and maintaining of bawdy-houses therein, which prohibits the same, and which bawdy-houses are prohibited by the penal laws of the state of Idaho. To the petition for the writ of prohibition the defendants filed a general demurrer.

Sec. 7459 of the Rev. Codes is as follows:

"When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear in a summary manner, the information and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for five hundred dollars in favor of the informer, and such costs as are allowed in civil cases."

The petition for the writ alleges that sec. 7459 of the Rev. Codes, upon which the application is based, and under which it is sought to remove and oust the plaintiff from his office as mayor, was in force and effect at the time of the enactment of said Black law, being chap. 82 of the Laws of 1911, and that it is inconsistent with the scheme of municipal government therein provided, in that said act provides the method and machinery for removing the elective officials of a city operating under its provisions, and that said sec. 7459 has been repealed and suspended so far as it affects the officials of Boise City operating under said Black law.

Chap. 82 referred to, sec. 34, provides: "The holder of any elective office, whether elected or appointed thereto, may be removed therefrom by recall; provided: That no recall petition shall be filed against any officer until he has actually held his office for at least three (3) months."

Chap. 82 also provides that in the event of a vacancy in the office of mayor or councilman, or if an election should fail by reason of a tie vote at any second municipal election held under its provisions, the council shall appoint a qualified person to fill such vacancy, and in either event the person so appointed shall hold his office subject to the provisions of the recall until the next general municipal election.

The petition alleges that all elective officers of a city operating under the provisions of the act, whether elected or appointed to office, are subject to removal by means of the recall therein provided, and not otherwise; that secs. 34 to 51, inclusive, of chap. 82 provide a full, complete and adequate remedy for the removal of all elective officials from office in said Boise City, whether elected or appointed thereto, by means of the recall, and the method and manner of circulating petitions and the filing thereof, and the duties pertaining thereto by the city officials are fully and specifically set forth in the sections referred to, which the affiant alleges to be full, adequate and complete, and which. is the only method and means contemplated by said act for the removal of elective city officials holding office under the provisions of said act; that the action mentioned is returnable before the Hon. Charles P. McCarthy, one of the judges of the third judicial district of the state of Idaho, on the 17th day of December, 1913, and the petitioner is informed and believes, and therefore upon such information and belief alleges, that said defendant, Hon. Charles P. McCarthy, will proceed to the immediate hearing of said cause upon the merits, forcing affiant and petitioner to submit to the jurisdiction of said court for alleged delinquency in office, when chap. 82 of the bill referred to, commonly and generally known as the Black law, under which the petitioner was elected and under which said city was at the time of the filing of said action mentioned in para-

graph III, and is now operating, prescribes and provides the method, manner and means for the removal of affiant and petitioner from his said office, and for that reason affiant alleges that the court and the judge thereof is without jurisdiction and authority to try said cause, and that he is proceeding and threatens to proceed to immediate hearing thereof, and in the event of an unfavorable decision thereon by defendant, the petitioner would be deprived of his office as mayor, without authority of and in violation of law, pending a decision thereon by this court, which would work a great injustice, hardship and irreparable injury upon affiant; that said court is without jurisdiction for the further reason that sec. 7459 does not apply to the removal of officers in cities and towns; that the petitioner is without speedy and adequate remedy in the ordinary course of law.

The first question presented to this court is whether sec. 7459, Rev. Codes, applies to municipalities, and does chap. 82, Laws of 1911, p. 280, known as the Black law, enacted by the legislature and approved March 13, 1911, with an emergency clause that the act shall be in force and effect from and after its passage and approval, repeal the provisions of sec. 7459, and in so doing create the exclusive remedy for the removal of officers of Boise City.

Sec. 7459 was enacted by the legislature of the territory of Idaho, before the adoption of the constitution. This court passed upon this statute in the case of *Rankin v. Jauman,* 4 Ida. 53, and upon rehearing the court said:

"The whole subject of county government, the designating of county, township, and district officers (except justices of the peace and general officers of the militia), and the providing for their appointment or election, was, by the organic act of the territory, left with the governor and legislative assembly; and a recognized incident of the power thus granted was the authority to provide for the removal of unworthy and incompetent persons from such offices."

In the above case reference is made to sec. 7459, which was a territorial statute; in said act no reference was made to the officers of *municipalities* and the court doubtless had this in

mind when it rendered the opinion in the case of *Rankin v. Jauman, supra.*

Sec. 6, art. 18 of the constitution of the state of Idaho provides as follows:

"The legislature by general and uniform laws shall provide for the election biennially in each of the several counties of the state, of county commissioners, a sheriff, a county treasurer, who is *ex-officio* public administrator, a probate judge, a county superintendent of public instruction, a county assessor, who is *ex-officio* tax collector, a coroner and a surveyor. The clerk of the district court shall be *ex-officio* auditor and recorder. No other county offices shall be established, but the legislature by general and uniform laws shall provide for such township, precinct and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office."

This provision of the constitution creates, by specific reference, all county officers as constitutional officers, and provides that the legislature, by general and uniform laws, shall provide for municipal officers as public convenience may require, and prescribe their duties and fix their terms of office. This provision of the constitution distinguishes county officers from municipal officers, making the first constitutional officers, while the creation of municipal officers is left wholly with the legislature. Other sections of the constitution make constitutional officers of various state officers; but nowhere does the constitution make reference to municipal officers.

Sec. 1, art. 12 of the constitution empowers the legislature to pass by general laws all necessary acts for the organization and classification of cities and towns, and sec. 7459 was not intended by the legislature to apply to the removal of municipal officers elected under the Black law.

Boise City was at the time of the enactment of sec. 7459, and at the time of the adoption of the constitution and of the Black law, operating under a special charter, which said charter was amended in 1907, with the proviso of impeachment and removal of city officers. Further, Idaho at the

time sec. 7459 was enacted was governed largely by appointive officers.

Sec. 7459, among other things, contains the following provision: "When an information in writing, verified by the oath of *any* person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty" of certain transgressions, omissions or neglect, as the case may be, the court must take action on such information. The legislature in the foregoing provision prescribed no qualification or fitness of the person making the information, or that he be a resident of the territory or state, and the statute makes no specific reference to officers of municipalities, but is a highly penal statute.

In the case of *Conwell v. Village of Culdesac*, 13 Ida. 575, 92 Pac. 535, the court discussed sec. 7459 in the following language:

"This case differs from that class of cases where the statute or charter specifies a particular office, and provides for the election, appointment or employment of an incumbent for a fixed period of time. It also differs from those cases where the statute enumerates the causes for which a removal may be made."

In that case the board of trustees removed an appointive officer and the petitioner held that secs. 7445 to 7459 provided the exclusive remedy for his removal. The court in that case observes:

"The remedy there prescribed is at best nothing more than a concurrent and cumulative remedy with that being pursued by the board of trustees. . . . . We do not think it was ever intended by the legislature that municipal authorities should go into a district court every time they want to discharge an appointive officer or employee. In fact, at the time sections 7445 to 7459 were enacted, the territory had no general incorporation law for cities, towns and villages, but, on the contrary, our cities and towns were incorporated by special charter, and special powers were granted the municipal authorities with reference to the employment, removal and discharge of local officers. We doubt, however, if it was ever

within the contemplation of the lawmakers that these sections of the statute should have any application to appointive officers within municipalities."

It is clear that this provision of the statute does not refer to any class of officers of municipalities, but was designed to apply to such officers as are named in the statute and constitution. It simply provides that information may be filed by any person against any officer within the jurisdiction of the court.

Chap. 82 of the Laws of 1911, commonly known as the Black law, provides in its title, "An Act providing a Form of Government for Cities of the State of Idaho," etc. This court has discussed and determined that where a legislative act is not clear as to the intention, the title may be looked to, and in construing this statute we call attention to the language used, "form of government," as it is construed in the case of *Winspear v. District Tp. of Holman,* 37 Iowa, 542:

"Government, in a political sense, signifies that form of fundamental rules by which the members of a body politic regulate their social action, and the administration of public affairs according to established constitutions, laws and usages." (See, also, Words and Phrases, vol. 4, p. 3139.)

Sec. 2 of the act referred to, among other things provides as follows:

"The first mayor elected after the adoption of this act shall hold office until the next general election, or until his successor shall be elected and qualified; thereafter a Mayor shall be elected every two (2) years and shall hold office until his successor shall be elected and qualified, *except as hereinafter provided.*"

Sec. 2 (a) states the exception: "If a vacancy shall occur in the office of Mayor or Councilman, the Council shall appoint a qualified person to fill such vacancy. If at any second municipal election, when such second municipal election is necessary, held under the provisions of this Act, the Mayor or other member of the Council be not elected by reason of a tie vote among any of the candidates therefor, then the Council after the qualifications of the persons, if any, elected

thereto at such election shall appoint one of the persons receiving such tie vote to fill such office as in the case of a vacancy therein. In each case the person so appointed shall hold office, subject to the provisions of the recall under the next general municipal election.''

Secs. 34, 35 and 36 of the Black law provide for removal of elective officers by the recall. Sec. 47 of the act prescribes a penalty in addition to ouster, to the effect that any officer removed by recall shall not be appointed to any city office or employment within two years after his removal.

There can be no question but that sec. 7459 is inconsistent with the provisions for the recall provided in the Black law, in that it provides a different penalty. Sec. 7459 provides for the assessment of a fine of $500 in favor of the informer against the ousted officer. The recall provision provides for ouster by recall and disqualification to hold office for two years.

The supreme court of California, in the case of *Dinan v. Superior Court of City and County of San Francisco,* 6 Cal. App. 217, 91 Pac. 806, lays down the rule that sec. 772 of the Penal Code (which is the same as sec. 7459 of our code) is inconsistent with the charter of San Francisco with respect to its provisions for the removal of an officer. In this connection there is some difference between sec. 7459 of the Rev. Codes and sec. 889 of the code of California, as the latter provides that municipal officers may be removed under secs. 758 to 772, which sections correspond to secs. 7445 to 7459 of the code of this state. It may be stated that in this state we have no statute authorizing a summary proceeding under sec. 7459 against any municipal officer.

In discussing the Black law with respect to the exception provided therein as regards the mayor, appearing in sec. 2 thereof, it becomes necessary to ascertain the effect of such an exception. There is a vast difference between the function of an exception and that of a proviso. An exception excepts out absolutely; a proviso defeats conditionally. Sec. 2, with respect to the mayor, contains an absolute exception, that he will hold office *''except as hereinafter provided.''* This is

an absolute exception. No reference is made to any other law; the statute does not say "except as hereinafter provided"; and "according to all laws now governing the removal of officials, or any law removing officials," as would have been done had the legislature intended that the Black law at the time it was enacted should be cumulative.

Upon the question of remedy provided in the Black law, the courts of many states have construed legislation similar to the Black law, which contained provision for removal of officers by recall, and have declared, or omitted to so declare, as to whether or not the remedy is cumulative. Chap. 48 of the 1907 Sess. Laws of Iowa, p. 46, provides for the recall, and says that the method of removal shall be cumulative and additional to the methods heretofore provided by law. Sec. 20 of chap. 116 of the Sess. Laws of 1911 of Washington, p. 532, provides for the recall, and says such method of removal shall be cumulative. Sec. 4, chap. 387 of the 1911 Sess. Laws of the state of Wisconsin, p. 432, provides that the recall as a method of removal shall be in addition to other methods provided by law. Sess. Laws of 1913 of the state of Missouri, p. 452, sec. 48, provides for the recall and declares it to be the cumulative method of removal. Sec. 15, chap. 22 of the 1913 Sess. Laws of New Jersey, p. 844, provides for removal by recall and also declares the same to be cumulative. Sec. 15, chap. 119 of the Sess. Laws of South Dakota, p. 120, does not provide that the recall is cumulative. Chap. 24 of the 1911 Sess. Laws, p. 165, of the state of Nebraska, provides for the recall as a method of removal and declares the same to be cumulative. Sec. 29, chap. 57, 1911 Sess. Laws of Montana, p. 112, provides for removal by recall, and declares the same to be cumulative. Sec. 18, chap. 84, 1911 Sess. Laws of Wyoming, p. 126, provides for removal by recall, and declares the same to be cumulative.

We think, under the construction in the case of *Gillesby v. Board of Commrs.*, 17 Ida. 586, 107 Pac. 71, which seems to be correct, that the provision in the Black law providing for the adoption of all general laws not inconsistent imported into the Black law such provisions only as will give force and

effect to the statute. In giving force and effect to the statute, meaning the Black law, the court will not by construction, and neither did the legislature intend to, import any of the general laws which do not fall or come within the purview of the Black law.

We are of the opinion that sec. 7459, being a general statute enacted before the adoption of the constitution, its provisions are not incorporated into the Black law, and therefore such section is not in force as to municipalities operating under the commission form of government, and that such section does not apply in the present case, and that the provisions of the Black law provide for a complete form of government for cities of the state of Idaho now or hereafter having a population of 2,500 or over, providing that such cities may become organized under the provisions of that act through the adoption thereof by special election.

Sec. 7459 is not repealed by the Black law, but is in force according to the provisions of such section of the statute, although not incorporated in the Black law. The Black law is the law of this state, and provides the provisions in relation to municipalities organized under such law.

In the case of *Chicago etc. Ry. Co. v. Chicago*, 148 Ill. 141, 35 N. E. 881, the law announced is applicable to Boise City.

Black on Intepretation of Laws, p. 10, announces the rule of interpretation as follows: "The function of establishing rules for the construction and interpretation of statutes, though properly judicial, has often been assumed by the legislature. Aside from special declaratory or expository statutes, to be noticed in a subsequent chapter, and the 'interpretation clauses' ordinarily found in elaborate and complex pieces of legislation, separate statutory construction statutes have been enacted in some of the states. In some cases these do not go beyond a general provision that all general terms and expressions used in statutes shall be liberally construed, to the end that the true intention of the legislature may be fully carried out." The object of all interpretation is to ascertain the meaning and will of the law-making body, to the end that it may be enforced, and it is not permissible under the pre-

tense of interpretation to make a law different from that which the law-making body intended to enact.

The case of *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692, is applicable in a way to the case now under consideration, and the rule there laid down is supported by the following cases: *Good v. Common Council,* 5 Cal. App. 265, 90 Pac. 44; *Hilzinger v. Gillman,* 56 Wash. 228, 105 Pac. 471, 21 Ann. Cas. 305; *State v. Houston* (Neb.), 143 N. W. 796; *Barnes v. Mayor of Chicopee,* 213 Mass. 1, 99 N. E. 464; *Boone v. State,* 170 Ala. 57, Ann. Cas. 1912C, 1065, 54 So. 109; *Mayor of City of Jackson v. State* (Miss.), 59 So. 873; *Salter v. Burke,* 83 N. J. L. 152, 83 Atl. 973; *Bonner v. Belsterling* (Tex. Civ. App.), 137 S. W. 1154; *Graham v. Roberts,* 200 Mass. 152, 85 N. E. 1009; *Cole v. Tucker,* 164 Mass. 486, 41 N. E. 681, 29 L. R. A. 668.

These cases above cited hold that the remedy shall be non-cumulative, and the courts also lean strongly toward the doctrine of permitting municipalities to control their own local affairs, and that the remedy of ouster by summary proceedings relates only to state and constitutional officers.

In the case of *Kessler v. Fritchman, supra,* this court refers to the "new form of government" that cities will become organized under when they adopt the Black law.

In arriving at what the legislature intended when the Black law was adopted as the law of this state, such act should be considered as a complete and clear and specific law for a "form of government for cities of the state of Idaho now or hereafter having a population of $2,500 or over, providing that any such city may become organized under the provisions of this act through the adoption thereof by special election, and providing the provisions therefor. . . . . "

It is clear that chap. 82 of the Black law used the phrase "a form of government for cities of the state of Idaho now or hereafter having a population of 2,500 or over," in the ordinary and generally accepted meaning of the words embraced therein; that is to say, it was intended to give the cities of the state having the required population the privilege of adopting by an election held therefor a new scheme or plan

upon which to operate and conduct its affairs; and sec. 7459, having been adopted prior to the adoption of the constitution, and in the absence of a provision in relation to municipalities, only applies to offices held under the general laws of the state, and not to cities and municipalities of the state which had the necessary population, and became organized and adopted the Black law by popular vote, and such section is inconsistent with the scheme devised in and by the Black law, and has no application and does not control the provisions embraced in chap. 82, Laws of 1911, p. 280.

The Black law indicates, when considered as a whole, that the legislature in enacting the same intended to provide a system complete within itself so far as the provisions of the act provided, and where it provides a method or means for doing an act, such as the removal of an officer elected under its provisions, it must have been and was intended to be exclusive of any other remedy provided prior to the enacting of chap. 82, and that the legislature has provided the recall provision of the Black law as the only and exclusive means, except other provisions which relate to the power of the council in removing an appointive officer provided for in the Black law.

The applicant refers to sec. 20, art 5 of the constitution of this state, which is as follows:

"The district court shall have original jurisdiction in all cases both at law and in equity, and such appellate jurisdiction as may be conferred by law."

Secs. 3829 and 3830, Rev. Codes, provide for the creation of district courts, and sec. 3829 reads as follows:

"District courts are hereby established to be held in each of the counties of this state which have been or may hereafter be organized by law, for the purpose of hearing and determining all matters and causes arising under the laws of this state. This court is presided over by district judges chosen by the qualified electors of their respective districts for a term of four years."

Sec. 3829, Rev. Codes, gives the district court jurisdiction over all matters and causes arising under the laws of this

state. Sec. 20, art. 5 of the constitution declares that the district court shall have original jurisdiction in all cases both at law and in equity, as well as such appellate jurisdiction as may be conferred by law. The Black law being a law of the state, matters arising thereunder would come under the jurisdiction of the district court, in so far as determining the validity of any ordinance passed thereunder. But, in the present case, the legislature having provided a remedy for the removal of the mayor, such remedy is exclusive.

There are very few states that have such a provision conferring jurisdiction on courts as this state has, our constitution and statutory provision being copied from the laws of the United States rather than from the state of California, in relation to the creation of district courts and the jurisdiction of the courts, and that jurisdiction comprehends and means exactly what this court said it means in the case of *Wayne v. Alspach,* 20 Ida. 144, 116 Pac. 1033, as follows:

"If the court had not jurisdiction over the subject matter, jurisdiction cannot by appearance or in any manner be conferred whereby the parties will be bound, and such defect or jurisdiction is not waived by appearance. The parties cannot confer jurisdiction of the subject matter by consent; they can, however, confer jurisdiction of the court over their persons by consent. Consenting parties cannot empower courts upon the subject matter; this the law can only do."

It is clear in this case that sec. 7459 makes no specific provision relating to the removal of municipal officers, and there is no attempt or intent, either expressed or from which a presumption could be entertained, to confer jurisdiction upon the district court to hear and determine the removal of a mayor growing out of the violation of a city ordinance, or neglect of duty to enforce a city ordinance, in cities that have organized and accepted the provisions of the Black law, chap. 82, Laws of 1911, p. 280.

Sec. 7445, Rev. Codes, refers to municipal officers and states that an accusation may be lodged against them for wilful or corrupt misconduct in office, and not for neglect of duty, as appears in sec. 7459. In sec. 7655, which confers jurisdiction

upon the district court to hear and try prosecutions upon information, we find this provision:

"The several courts of this state shall possess and may exercise the same power and jurisdiction to hear, try and determine prosecutions upon information for crimes, misdemeanors and offenses, to issue writs and process, and do all acts therein as they possess and may exercise in cases of like prosecution upon indictments."

This section confers jurisdiction upon the court to try such cases on information where the state legislature has acted and declared it to be the duty and imposed the duty on an officer to do certain things under the law, as the legislature has done with respect to county commissioners and others. But where the legislature has not conferred jurisdiction by said section or any other section upon the district court to determine matters with respect to violation of duties arising under a city ordinance, courts have not jurisdiction to so do.

The case of *State ex rel. Brandt v. Thompson,* 91 Minn. 279, 97 N. W. 887, is a case where a statute related to the creation of municipalities in the state of Minnesota, where the act provided for a commission form of government, and that any officer or employee of the city guilty of misconduct in office, or who offends against the provisions of the act, shall be deemed guilty of misdemeanor, and upon conviction shall forfeit his office and be forever disqualified from holding an office of trust or profit under the city government. The court, in commenting upon this provision, which is similar to the Black law, uses this language:

"The contention that, independent of any statutory authority, the governing body of a municipality has power to remove its mayor for cause, is not sound. It is quite true, as a general proposition, that the power of removal of public officers is incidental to the power of appointment (*Parish v. St. Paul,* 84 Minn. 426, 87 Am. St. 374, 87 N. W. 1124), but this applies more particularly to appointive officers, and not to those elected by the people. The subject of removal of all officers is within legislative control, and where that body prescribed a manner and method of removal, it is exclusive. A

method of removal is provided by the statute under which
East Grand Forks is now incorporated, and the method there
pointed out must be followed.''

In the case of *Hilzinger v. Gillman,* 56 Wash. 228, 105 Pac.
471, 21 Ann. Cas. 305, the court says:

''For what term was the appellant elected? This inquiry
is answered by the charter, and the answer is that he was
elected to hold office until the first Tuesday after the first
Monday in January, 1910, unless removed for cause or recalled
in the manner provided herein.''

It is argued that the common law or rule cannot be invoked
against the mayor, on the ground that such attempt would be
grossly subversive of justice, as the Black law applies to Boise
City and clearly and specifically provides the procedure to be
pursued in removing the mayor, and that such statute is in
force as a part of chap. 82, Laws of 1911, and that the common
law is not applicable in this case.

We have considered the briefs and the oral arguments made
by counsel in this case, and we are satisfied that counsel have
made a thorough examination of all the authorities consider-
ing enactments in the states where laws similar to the Black
law have been construed by the courts, and we are satisfied
that the law has been sustained and the right of removal by
recall has been sustained as the remedy to be pursued in
removing the mayor and officers of a municipality operating
under the Black law, which remedy is clearly provided for
and applies in the cases considered by this court in this
opinion, and that the trial court has no jurisdiction in the
enforcement of city ordinances where there is a penalty pro-
vided in connection with the failure to perform the duties of
the office of mayor.

It is held that the trial judge, Hon. Charles P. McCar-
thy, before whom the case of John Tucker, Plaintiff, v. Arthur
Hodges, Mayor of the City of Boise, Idaho, Defendant, was
pending, consisting of two causes of action under sec. 7459
of the Rev. Codes, for the purpose of removing and ousting
affiant and petitioner from his office as mayor, has no juris-
diction of the action, inasmuch as sec. 7459 of the Rev. Codes

has no application or force as to the municipality of Boise City.

It is therefore ordered that a permanent writ of prohibition issue, directed to Hon. Charles P. McCarthy, one of the judges of the district court of the third judicial district of Idaho for Ada county, restraining and prohibiting him from proceeding further with the trial of said causes. Costs awarded to plaintiff.

AILSHIE, C. J., Concurring.—The chief consideration which leads me to the conclusion reached by the principal opinion is the conviction that the ouster procedure provided for by sec. 7459, Rev. Codes, is inconsistent with the recall provisions of the commission government act. The recall may be invoked by the people for any cause or reason which may arise, and when properly submitted the people take a vote on the question and they convict or acquit—that is, remove or retain him—by a majority vote. If they acquit the officer of the charge, he remains in office; if they convict, he goes out. This is the effect of the recall. It was certainly not intended that the people and the courts could both hear and pass on the same charges at the same time, and possibly each reach a different result from the other. These things convince me that it was intended that where a city adopts the provisions of the Black law, it would thereby abandon the court and judicial methods of procedure for removal of officers and substitute the recall therefor. I cannot avoid the conclusion that the adoption by a city of the provisions of the Black law has the effect of suspending the operation of sec. 7459 of the Revised Codes as to all officers of such city. I concur in issuing the writ.

Sullivan, J., concurs.